OCTOBER AND NOVEMBER TERM, 1881, No. 242.

## City of Oil City *versus* Morris.

1. The commission required by the act of March 11th, 1872, "relative to sewers in the city of Oil City," is such a "board of viewers" as is contemplated by the act of May 1st, 1876, P. L., p. 94, which provides that councils of cities shall not pass any ordinance authorizing grading or paving or the construction of any sewer or bridge before they have caused "the board of viewers or other officers upon whom the duty may, by law, be imposed, to view the property included in the map or plan of the property liable to such assessment, and make a schedule showing the total cost value of the same as nearly as can be ascertained, and the amount each property-owner will be liable to pay for such improvement."

2. It is imperative that the commission provided for in the act of March 11th, 1872, should view the property liable to assessment for the cost of construction of sewers.

ERROR to the Court of Common Pleas of *Venango County.*

*Scire facias sur* municipal claim filed by the city of Oil City against Louis Morris, owner or reputed owner of a lot in the said city, for the construction of a sewer.

The act relative to sewers in the city of Oil City, approved March 11th, 1872, provides, *inter alia :*

"SECTION 1. That the civil engineer of said city and the committee of the city council on streets shall form a commission to make and adopt a general plan dividing the whole city into sewer districts, to be submitted to council for approval; each district to have one or main sewer, with necessary branches, connections, and inlets; said districts to be approved by council, and a plot or plots correctly delineating the said general plan of sewer districts, main sewers, connections, etcetera, to be filed in the office of the city engineer before any sewers shall be constructed in pursuance of this act.

"SECT. 2. It shall be the duty of said commission to designate the district or districts in which sewerage is necessary, and prepare plans and specifications for the construction of sewers, showing location, inclination, and size of the same, and depth below street grades; when said specifications and plans are prepared, notice thereof shall be given to all parties in interest, in such manner as the council shall determine by ordinance, for their inspection; and the plans and specifications finally adopted by the commission shall be submitted to the council for approval, and when approved, shall be and remain the correct plan of sewerage for the designated districts or parts thereof, subject, however, to alteration in case of opening new streets, or other causes which may render an alteration necessary; and the council, when they deem the same necessary, may cause to be constructed any sewer or

sewers specified in said approved plans, and direct contracts to be made for the construction of the same.

"SECT. 3. That as soon as the construction of any sewer is authorized by the council, and before entering upon the work of construction, it shall be the duty of the commission to ascertain the amount required to cover the cost and expenses of said construction; and to assess the same in the manner hereinafter provided; and the said commission shall file a schedule of the said assessments with the controller, and shall give notice, by advertisement for ten days, that the city council will sit in appeal on a certain day, when the said schedule of assessments will be presented for the correction of errors and mistakes, and for final approval; and in the meantime all persons interested shall have opportunity to examine the same; and the council shall, after such hearing, finally adopt said schedule, with such amendments as they may see proper to make; and when said schedule shall have been so adopted, the same shall be final and conclusive without exception or appeal."

The remaining sections of the act provide for the manner of assessment, the lien and its enforcement, and authorize councils to establish rules and furnish plans.

Under this act an ordinance for the construction of a sewer was passed January 29th, 1878, and a lien was filed against the property of the defendant to August Term, 1878.

The act prescribing the manner in which the councils of cities, other than those of the first class, may pass ordinances authorizing the grading or paving of avenues, streets or alleys, and the construction of sewers and bridges, approved May 1st, 1876, provides:

"SECTION 1. That the councils of cities in this commonwealth shall not pass any ordinance authorizing the grading or paving of any avenue, street or alley, or the construction of any sewer or bridge, before they have caused the city engineer to make an estimate of the total cost of such improvement, particularly stating the items and the cost of each, and a map or plan of all the property liable to assessment for the cost of the same, and also caused the board of viewers, or other officers upon whom the duty may by law be imposed, to view the property liable to such assessment, and make a schedule, showing the total cash value of the same as nearly as can be ascertained, and the amount each property-owner will be liable to pay for such improvement, which estimate, map, or plan and schedule shall be attached to the ordinance before its passage, and shall remain on file in the proper office for the benefit of all persons interested; and any ordinances which shall be passed by the councils of

any city in this commonwealth, authorizing the grading or paving of any avenue, street or alley, or the construction of any sewer or bridge, before the provisions of this act are complied with, shall be null and void and of no effect: *Provided*, That the provisions of this act do not extend to cities of the first class.

"SECT. 2. All acts or parts of acts inconsistent with this act are hereby repealed."

Upon the trial in the Court below, W. R. Stevenson testified for the defendant that he was city engineer up to April, 1878; that he was one of the sewer commission, and the other members were the street committee; that he was not sure he did anything with reference to assessing damages; that as a member of the board he got up the plans; that after they were made out and submitted to the commission, in 1877, there was a movement made for the construction of the sewer; that nobody viewed the property with him; and that there was no one in connection with him in fixing the schedule of assessment and value of the property.

Counsel for defendant asked the Court to charge:

That by the provisions of the act of Assembly, before the ordinance for the construction of a sewer in Spring Street was passed, it was essential that a board of viewers, or some other body officially performing the duties of viewers, should go on and view the property liable to assessment, and make a schedule showing the total cash value of the same and the amount each property will be liable to pay, and unless such view was made by said board, or other official body, such ordinance was invalid, and the plaintiff cannot recover.

The Court affirmed this point, and charged the jury:

"Under our view of the law there is but a single question to submit to you. That this assessment was made and the notice of the amount in accordance with the law duly published, is not controverted. But the defendant says there was no view of the premises as provided for by the act of Assembly of May 1st, 1876. That there having been no view, the ordinance under which the plaintiff claims to have the authority to do the work and charge the assessment upon the lot was void, and of no effect, and for that reason he says your verdict should be for the defendant.

"The ordinance providing for the laying of a sewer on Spring Street was passed January 29th, 1878. The date of this ordinance it is material for you to remember, as we will leave the question to you. [It leaves you to find whether the city engineer and the commission viewed these premises as a body before the passage of this ordinance of January 29th, 1878. Viewing afterward would not do. You must

[City of Oil City v. Morris.]

decide whether they viewed these premises prior to the passage of the ordinance. In pursuance of that fact, did they make a map, or cause one to be made of the district, showing the different lots and the amount of assessment upon each, made in pursuance of this view and after it. If they did, your verdict should be for the plaintiff. If not, for the defendant.]

Now, as to who should make this view is an important question. [It is not enough for one of the city commission to go there. All of them may go there on different days, but it is not enough. There must be an official act. They must go in a body. It is not necessary that all be present, but a majority must.] [In order to see who should make this view we refer to Section 1 of the act of March 11th, 1872. The civil engineer and street committee of the city shall form this commission for this purpose. The officers to make such view were the street committee of the city council together with the city engineer.] The plaintiff has given in evidence who they were, and they formed the commission whose duty it was, under the adoption of this ordinance, to have gone on the premises and made view. The first section of the act of May 1st, 1876, is as follows: (Act read.)

It is alleged by the defendant that there was no view by this commission, as provided by law, before the passage of the ordinance; and that such map and plan was not attached before its adoption, as provided. That there was a draft made by the city engineer, commenced, I believe, in 1876, of the whole of the city districts, and the draft made of all, including this one, attached to the ordinance before the passage is certain. There is evidence here sufficient, perhaps, for you to find that that was adopted by council.

"As far as the making of the plan, we think there is evidence of its being approved by the commission and council, but did they go upon the premises and view them, and then make up the assessment after that? [The burden of proof is upon the plaintiff; it was thrown upon the defendant and the burden was shifted.]

[Are you satisfied that such a view was made by this commission as a body before the passage of this ordinance? If you are so satisfied, then your verdict will be for the plaintiff; if you are not so satisfied, it will be for the defendant.]"

May 9th, 1881, verdict for the defendant, upon which judgment was entered.

The plaintiff took a writ of error, assigning as errors the answer to defendant's points and those portions of the charge within brackets.

[Straub *v.* City of Allegheny.]

*Isaac Ash* and *F. W. Hays* for plaintiff in error.

The act of May 1st, 1876, is blind legislation, so far as many cities of the State are concerned. By none of the acts by which Oil City has been governed are there constituted any officers known as "the board of viewers." The duty of making such view is not imposed on any officer of the city. All has been done that was required. Township of Ridgway *v.* Wheeler, 9 Norris, 453. The defence is purely technical.

*J. D. Hancock* and *McCalmont & Osborn* for defendant in error.

The requirements of the act of May 1st, 1876, were wholly ignored.

OCT. 31, 1881.—PER CURIAM: The commission required by the act of March 11th, 1872, relative to sewers in Oil City, was such a board of viewers as was contemplated by the act of May 1st, 1876, and which made it imperative that such board should view the property liable to assessment for the cost of construction of the sewers. It was properly, therefore, submitted by the learned Court to the jury to find whether such a view was made by this commission as a body before the passage of the ordinance. The errors assigned are, therefore, not sustained.

Judgment affirmed.