City of Reading, Appellant, *v.* Catharine Celia O'Reilly, widow of Patrick O'Reilly, deceased; Francis P. O'Reilly, John F. O'Reilly, Anthony F. O'Reilly, James A. O'Reilly and Mary A. O'Reilly, heirs of Patrick O'Reilly, deceased, with notice to terre-tenants, if any.

*Municipalities—Grading streets—Act of May* 1, 1876.

The act of May 1, 1876, providing that councils of cities not of the first class " shall not pass any ordinance authorizing the grading or paving of any street . . . . before they have caused the city engineer to make an estimate of the total cost of such improvement, particularly stating the items and the cost of each, and a map or plan of all the property liable to assessment for the cost of the same, and also caused the board of viewers to view the property and make a schedule showing the total cash value of the same as nearly as can be ascertained, and the amount each property owner will be liable to pay for such improvement; which estimate, map or plan and schedule shall be attached to the ordinance before its passage and shall remain on file in the proper office for the benefit of all persons interested," and declaring that any ordinance for paving, etc., passed before compliance with this requirement shall be void, is not complied with where the necessary plan, estimate, etc., are attached, as required by the act, to an ordinance which failed of passage, and are subsequently detached from this ordinance and attached to another ordinance which does pass, by the city clerk, without the authority of councils as a body. Oil City v. Morris, 1 Penny. 420; Erie City v. Brady, 127 Pa. 169, and Beaumont v. Wilkes-Barre, 142 Pa. 198, distinguished.

In such a case the attachment of the old plan to the new ordinance by the command of councils would not be sufficient. When a plan, estimate, etc., are made in view of a specific ordinance and that ordinance with its attachments fails, they all fall together. The report of the city engineer and others need not be thrown away, and the work all done over again.

If the interval is such that there is a fair presumption against any material change in the situation, councils may reasonably direct the city engineer to take up his report again and supplement it with reference to present circumstances. But in every case the prerequisites to the passage of an ordinance prescribed by the act must be had with direct reference and in the very course of the legislation itself.

*Municipal claims—Joint owners.*

A municipal claim is a proceeding *in rem*, and there is no authority for dividing up the assessment and filing part of it against the "right and title" of one joint owner.

*Municipal claims—Foot front rule—How question whether property is urban or rural to be decided.*

The question whether property is urban or rural, in regard to its liability for a foot front assessment for improvements, is usually for the jury, because it is one of fact; but where the facts are agreed upon, it becomes a question of law for the court. Where it is a question of law, it should be withdrawn from the jury.

Argued March 7, 1895. Appeal, No. 285, Jan. T., 1895, by plaintiff, from judgment of C. P. Berks Co., Jan. T., 1892, No. 30, for defendants, n. o. v. for plaintiff. Before WILLIAMS, McCOLLUM, MITCHELL, DEAN and FELL, JJ. Affirmed.

Sci. fa. sur city lien.

On the trial before ERMENTROUT, J., the following points submitted by the defendants were reserved, the facts set forth in the 4th, 5th, 6th and 7th points being admitted by counsel for both plaintiff and defendants:

"4. It appearing from the records of councils, offered in evidence, that the map, plan, schedule and report of viewers were attached to Select Council Bill No. 37, which said bill was defeated, all the matters therewith connected were annulled, and it was necessary, in order to effect a valid ordinance, that councils should adopt a new resolution, have a map or plan made, and another report of viewers submitted in order to bind abutting property owners under Common Council Bill No. 30, and having failed to proceed in this manner, the said ordinance is null and void and of no effect, and the verdict must be for the defendants.

"5. The land adjoining South street on the south being owned by the city of Reading, plaintiff above named, and the defendants as joint tenants; the plaintiff cannot lay an assess-

ment for grading upon this property, and the verdict must be for defendants.

" 6. Plaintiff's lien is filed against all the right, title and interest of the defendants in all that certain lot of ground with improvements, situate on Penn's Mount, in the city of Reading, Berks county, beginning at a corner in a range with Ninth street extended, thence along South street extended, thence along South street extended N. 68 degrees E. 36.2 perches to a corner in a range with Tenth street extended; thence along land of Eckert & Bro., S. 3¾ degrees W. 23.2 perches to a stone corner; thence by land sold to Patrick O'Reilly, deceased, S. 10 degrees W. 6.2 perches to a stone corner; thence by land of Reading Iron Works, S. 67½ degrees W. 34.9 perches to a post corner; thence by Ninth street extended 3¾ degrees E. 21 perches to the place of beginning. Containing six acres and and thirty-five perches, strict measure. Being one half cost for grading South street 536′ 6¼″; and it being admitted that the city of Reading and the defendants are joint tenants or tenants in common of the said tract, one joint tenant or tenant in common cannot file such a lien against the other, and the verdict must be for the defendants.

" 7. It appearing from the evidence that the property of George Smith is situate on the corner of Ninth and South streets running back a distance of 134 feet, 7¼ inches, upon which there was for many years previous to the grading of this street erected a hotel building and back buildings, which were there at the time of the grading, the hotel building fronting on Ninth street; that back of this property there was located the Reading Brewing Company stable and the Reading Brewing Company Park, inclosed by a retaining wall and board fence for the distance of 405 ft., 11″, to Tenth street, and that these were the only two properties on the north side of South street, and that upon the other side of South street the estate of P. O'Reilly and the city of Reading own the entire frontage as tenants or tenants in common, the land being uninclosed without any buildings thereon, and constituting one entire tract of six acres and thirty-five perches, running up to the city line and abutting on farm lands in the adjoining township, and that the land east of said property for a distance of three blocks is occupied by cemetery companies and is used for cemetery purposes alone, the

rule of assessment per foot front is illegal and void, and the verdict must be for defendants.

"8. Under all the evidence the verdict must be for the defendants."

Other facts appear in the opinion of the Supreme Court.

The jury rendered a verdict for plaintiff. The court subsequently entered judgment for defendants on the reserved points non obstante veredicto in an opinion of which the following is a part:

"It is true the jury by their verdict have said that this was not suburban, rural or farm property, and in numerous decisions it has been said the character of the property is a question for the jury: Seely v. Pittsburg, 82 Pa. 360; Kelly v. Pittsburg, 85 Pa. 174; Craig v. Philadelphia, 89 Pa. 265; Scranton v. Pennsylvania Coal Co., 105 Pa. 445; South Chester Borough v. Garland, 162 Pa. 91.

"But here there is no dispute as to the situation of this land. The law regulating the assessment according to the foot front rule does not apply to rural property. In the case of Washington Avenue, 69 Pa. 352, the court say: 'As a practical result, in cities and large towns, the per foot front mode of assessment reaches a just and equal apportionment in most cases. So long, therefore, as a law faithfully and reasonably provides for a just assessment according to the benefits conferred, and does not impose unfair and unequal burdens, it cannot be said to exceed the legislative power of taxation, when exercised for proper objects. It is on this ground only that assessment according to the frontage of property on a public street to pay for its opening, grading and paving is to be justified. But this rule, as a practical adjustment of proportional benefits, can apply only to cities and large towns when the density of population along the street and the small size of lots make it a reasonably certain mode of arriving at a true result.'

"Here, however, the property in question is unoccupied, without buildings, an open common used for grazing, and over six acres in extent, and forms part of Mount Penn, extending to the city line without a building, without a street upon the entire surface, and abutting admittedly on farm, country property, whilst opposite is a hotel fronting on Ninth street, extending back 141 feet to a stable, and some 400 feet of a

park filled with trees and pleasure ground connected with the brewing company plant, the whole street graded being but a square in length. It seems to us that this six-acre tract is entirely rural or suburban in its character.

"In order that this question may be settled as bearing upon other cases that are arising, we have concluded to hold, that, under this admitted state of facts, there is no reason for the application of the foot front rule, and, therefore, also enter judgment for the defendants upon this reserved point."

*Errors assigned* were 1–5, the entry of judgment for the defendants n. o. v. on the above points reserved, quoting them.

*William J. Rourke*, city solicitor, for appellant.—The detaching of the map, plan, schedule and estimates from Select Council Bill No. 37 and the affixing of the same to Common Council Bill No. 30, before the passage of the latter, was a compliance of the act of May 1, 1876: Oil City v. Morris, 1 Penny. 420–424; Erie City v. Brady, 127 Pa. 169; Beaumont v. Wilkes-Barre, 142 Pa. 198.

The question as to whether or not the property was urban or suburban, was entirely for the jury: Seely v. City of Pittsburg, 82 Pa. 361; Kelly v. City of Pittsburg, 85 Pa. 170; Craig v. City of Phila., 89 Pa. 265; Scranton v. Penna. Coal Co., 105 Pa. 445.

The foot front rule has been recognized as just and equitable in this and other states: Pennock v. Hoover, 5 R. 291; Pittsburg v. Woods, 44 Pa. 113; Magee v. Commonwealth, 46 Pa. 358; Schenley v. Allegheny, 25 Pa. 128; Stroud v. Phila., 61 Pa. 255; Phila. v. Coulston, 118 Pa. 541; Ruan St., 132 Pa. 276; 2 Dillon Mun. Corp., 4th ed. page 932; Cooley on Taxation, 644.

The question of the divisibility of the property for lien purposes does not arise; if the city did not file its claim against the property for the entire cost of the improvement, the defendants are not in a position to complain; that the lien is filed against the "right, title and interest" of the defendants is of no importance, because that is all that could be bound by the lien, and the determination of the interest of the defendants cannot arise until execution has been issued, when it would

have to be raised in a different proceeding. In Oliver v. Mont-
gomery, 42 Iowa, 36, it was decided that a cotenant who has
paid taxes upon property held in common is entitled to a lien.
In the present case, the plaintiff paid the entire contract price
for the grading and is here seeking to recover one half of this
lot's proportion thereof. There is no testimony in this case
showing that the property in question was put to any public
use ; it was an open common. The objection on this point is
merely technical.

*E. H. Deysher*, of *O'Reilly & Deysher*, for appellees.—The act
of 1876 was not complied with. The cases of Oil City v. Mor-
ris, 1 Penny. 420, and Erie City v. Brady, 127 Pa. 169, both
decide that the estimate, map and plan by the engineer and
the view by the viewers must be made before the introduction
of the ordinance.

The proceeding was *in rem:* Junction Railroad v. Phila., 88
Pa. 428. Each owner had an undivided moiety in the whole,
therefore the assessment should have been against the whole
property and there cannot be a subdivision of interest.

The general statutes of the state upon the subject of taxing
property refer to private property, not to that owned by the
state : Dillon on Mun. Corp. § 614 ; People v. Doe, 36 Cal. 220.

There was no evidence in this case that the property in ques-
tion was anything but rural, and this question should not have
been submitted to the jury ; the court rightly determined it in
favor of defendants. The foot front rule does not apply to
rural property: Washington Ave., 69 Pa. 352 ; Seely v. City
of Pittsburg, 82 Pa. 360 ; Craig v. City of Phila., 89 Pa. 265 ;
City of Scranton v. Penna. Coal Co., 105 Pa. 445.

OPINION BY MR. JUSTICE MITCHELL, July 18, 1895 :

The act of May 1, 1876, P. L. 94, provides that councils of
cities not of the first class " shall not pass any ordinance author-
izing the grading or paving of any street . . . . before they
have caused the city engineer to make an estimate of the total
cost of such improvement, particularly stating the items and
the cost of each, and a map or plan of all the property liable to
assessment for the cost of the same, and also caused the board
of viewers to view the property and make a schedule showing

the total cash value of the same as nearly as can be ascertained, and the amount each property owner will be liable to pay for such improvement; which estimate, map or plan and schedule shall be attached to the ordinance before its passage, and shall remain on file in the proper office for the benefit of all persons interested "and any ordinance for paving, etc. passed before compliance with this requirement shall be void."

The select council of the city of Reading on Aug. 9, 1886, passed an ordinance, S. C. No. 37, for the grading of South street. This ordinance had the necessary plan, estimate, etc. attached as the act of 1876 required, but on coming up in common council, Sept. 2, 1886, it was defeated.

On Sept. 27, 1886, a new ordinance, C. C. No. 30, was introduced into common council, and on Oct. 11, 1886, it was passed by both chambers. This ordinance was not preceded by any action of councils causing the city engineer to make an estimate, plan, etc., in connection with it, but at some time, which the jury have found was before final passage, the plan, estimate, etc., belonging to the defeated ordinance, S. C. No. 37, were detached therefrom, and attached to the new ordinance, C. C. No. 30.

These facts being undisputed, the question raised by the first point reserved is whether they show a sufficient compliance with the act of 1876 to make the second ordinance, C. C. No. 30, valid. We are clearly of opinion that they do not.

It would be sufficient objection for the purposes of this case, that the attachment of the plan etc. to the new ordinance was not done at the command, or by the authority of councils, nor so far as appears even with their knowledge as a body, though some of the members knew of it. It was the act of the city clerk of his own motion or on the suggestion of a member as to the necessity of it. This was entirely insufficient. The statute contemplates that it shall be done by council as a body, in their legislative capacity, so that all the members shall have notice or knowledge of the facts which are made a prerequisite to their valid legislative action.

But even if the attachment of the old plan to the new ordinance had been by command of councils themselves, that alone would not have been sufficient. The main object of the act of 1876 was to compel councils when passing the ordinance to

have before their immediate view the situation of the property
on the street, the probable cost of the improvement, and the
distribution of the burden on the lot owners who were to be
called upon to pay.    Incidentally also the same information was
to be for the benefit of lot owners and others interested, and to
this end the plan etc. were to remain on file.    But the main
purpose was to serve as a check on ignorant and inconsiderate
legislation, by bringing the most important relevant facts to the
direct notice of the members and the body, when in the act of
legislating upon them.    It is part of the system which is found
in the constitutional provisions that the subject of bills shall
be clearly expressed in their titles, and that no bill shall be re-
vived, amended, etc. by reference to title only, but by reënact-
ment at length, and which is carried through nearly all of our
statutes relating to municipal bodies and their legislative action.
When a plan, estimate etc. are made in view of a specific ordi-
nance, and that ordinance with its attachments fails, they all
fall together.    Of course we do not refer to reconsideration of
votes, under the rules of the legislative body, but to new action.
When such action starts it must start anew on its own basis.
If a plan and estimate made for one ordinance may be taken by
councils as a basis for another after two months, it may be so
taken after a longer interval, and in the meanwhile there will
be no certainty that the situation and value of the property may
not have changed.    There will be no standard but the discre-
tion of councils, which the act of 1876 intended to restrain
within the prescribed limits.    It is not meant that the report
of the city engineer and others must necessarily be thrown away,
and the work all done over again.    If the interval is such that
there is a fair presumption against any material change in the
situation, councils may reasonably direct the city engineer to
take up his report again and supplement it with reference to
present circumstances.    All that we mean to say is that the
prerequisites to the passage of an ordinance, must be had with
direct reference and in the very course of the legislation itself.
Otherwise the main object of the statute is not accomplished.

    There is nothing in the cases cited by appellant, which con-
flicts with these views.    Oil City v. Morris, 1 Penny., 420,
decided that a view by the commission under the act of 1872

was equivalent to one by a board of viewers under the act of 1876, and the question whether the view was made before the passage of the ordinance was properly left to the jury : Erie v. Brady, 127 Pa. 169, was to the same effect, that a positive averment in an affidavit of defense that no plan was made, would carry that question to the jury. Beaumont v. Wilkes-Barre, 142 Pa. 198, was not on the same question at all. The stress of that case was on the borough act of 1851. A proceeding for paving a street commenced in 1883, but was delayed and protracted by injunctions, protests, changes of plan, etc., until finally the plan and estimate required by the act of 1876 were made in December, 1885, and an ordinance passed in February, 1886. The court held the proceedings continuous, and that a notice to the lot holders in 1884 followed by hearings and remonstrances from time to time, was not too remote under the act of 1851. The act of 1876 was strictly complied with, and the views of RICE, P. J., quoted on pp. 216, 217, are in exact accord with those we have expressed.

The whole ordinance being invalid it is not strictly necessary to consider the other points, but we are of opinion that the lien was bad in form. It is a proceeding in rem, and there is no authority for dividing up the assessment and filing part of it against the " right and title " of one joint owner.

The learned judge left to the jury the question whether the land was rural, and they found it was not. But the facts having been stated in a point reserved, the judge was of opinion as matter of law that it was. The question whether urban or rural is usually for the jury because it is one of fact: South Chester v. Garland, 162 Pa. 91 ; McKeesport v. Soles, 165 Pa. 628. But where the facts are agreed upon it becomes a question of law for the court as in other cases. We cannot say that the learned judge with his superior knowledge of the locality was not right in his view of the point reserved, but we have here two opposite findings on the same facts. This, to say the least, is inconvenient practice. Either the question should have been withdrawn from the jury on the ground that the facts were agreed upon for the court, or having been submitted to and found by the jury the point reserved should have been considered as withdrawn ; and the verdict, if against the

evidence, should have been set aside, so that on a new trial, if the facts still appeared undisputed, the court might give a binding direction.

Judgment affirmed.