## RAILROAD v. BERKS COUNTY.

## BERKS COUNTY v. RAILROAD.

It is only such property belonging to a railroad corporation as is appurtenant and indispensable to the construction and preparation of the road for use, that can claim to be exempt from taxation; such property as is only indispensable to the making of profits being liable to taxation.

Hence, water stations and depots—by which latter is to be understood, the offices, oil-houses, and places to hold cars, and such places and buildings as may fairly be deemed necessary and indispensable to the construction of the road—are not taxable; whilst warehouses, coal-lots, coal-shutes, machine-shops, wood-yards, and the like, are taxable.

*June* 18. These were writs of error to the Common Pleas of Berks county sued out by the plaintiff and by the defendant below. The errors assigned upon each writ were argued together.

In the court below, the case was presented upon amicable action, in which the following statement of facts was agreed to be considered in the nature of a special verdict:

"The assessor of the south-east ward in the city of Reading returned, for taxation, for county rates and levies, as the property of the company, at the valuations specified in the assessment, a depot and coal-yard, valued at fifty-three thousand dollars.

"The assessor of the north-east ward in said city of Reading returned, as the property of the company, liable to taxation for the same purposes, twenty-two and three quarter acres of land, valued at fourteen thousand and four hundred dollars.

"The assessor of Centre township, in said county of Berks, returned for taxation for the same purposes, a depot, valued at four thousand seven hundred dollars.

"The assessor of Upper Bern township, in said county, assessed and returned for taxation for the same purposes, three water stations, valued at fifteen hundred dollars.

"The property in south-east ward is occupied entirely by the company, for the manufacture, construction and repair of their locomotives, cars, and other machinery used upon their railroad, and for an office for the sale of passenger tickets, and for the accommodation of the passengers, and has been so occupied for many years past, and is necessary for the proper transaction of the business of said company.

"The properties in Centre township and Upper Bern township were erected by the company, and have always been used by them

for the transaction of business upon their said road, and are necessary for the same.

"The property in the north-east ward is occupied by the company for a freight depot, wood-yard, and coal-yard, and for coal-shutes and oil office, all of which were constructed by the company, and are necessary for the convenient and proper use of their railroad, and the trade on the same, (except ten acres not now occupied for such a purpose, though so intended, which ten acres were purchased about one year since, for the sum of four thousand dollars.)

"The company was incorporated, and constructed their said railroad in pursuance of the act of Assembly of April 4, 1833, and June 15, 1836."

"The questions for the decision of the court are, whether any, and if any, what part of the said property is liable to taxation under the Acts of Assembly for that purpose? If the court should be of opinion that the said depot and coal-yard in south-east ward, or the said water-houses in Upper Bern, or depot in Centre, or twenty-two and three quarter acres of land in north-east ward, are liable to assessment for taxation, their judgment to be entered for the plaintiff, specifying in their opinion which, if any, of the said premises, or what parts of the same, are so liable, otherwise judgment to be entered for the defendants."

The opinion of the court below was delivered by JONES, P. J., as follows:

"There are several objects of property, presented in this case stated, which, in our opinion, are not exempt from the operation of the tax laws of the Commonwealth.

"Under the case in 8 Watts & Serg. 334, in which it is decided, that the toll-houses and collectors' offices belonging to an incorporated canal, and incident thereto, are not taxable as land or real estate, under the acts of 1834 and 1844, and for the very sufficient reasons there stated, we have no difficulty in deciding that in the present case the water stations and depots of this road, being accessories, and indispensable ones too, of the road, are not subject to assessment for taxation. Those stations and depots are clearly as necessary and incidental to a railroad as toll-houses and collectors' offices are to a canal. Without them the franchises of the company could not well be enjoyed at all—the engines could not run without regular and certain supplies of water at these stations, nor could the financial and other business of the company be conducted without the offices upon the line of the road, and the depots,

which are necessary for receiving the engines and protecting them from injury, for collecting and storing the very bulky materials used in working and in repairing the road, and also for receiving passengers and freight.   Indeed, the act of incorporation of the company, of 4th April, 1833, (Pamphlet Laws, 150,) makes these depots and water stations part of the road in express terms, where, in the proviso of § xi., it is declared that the said railroad shall not, except in deep cuts and fillings, or at points selected for depots or engine and water stations, exceed four rods in width.    Under that *proviso* the company might have selected the ground for its depots, &c., and have erected them thereon, paying damages to the owner of the fee under § xii., and enjoying a mere easement on the land so occupied.    That the company preferred purchasing the fee, if it has done so, can make no difference.    The land burdened with the easement would not have been liable to assessment for taxation as against the owner of the fee, nor, as we conceive, against the holder of the easement.    Taking it then for the purposes, and as part of the road, why should it be taxed when held by the company, any more than if held by the inferior tenure ?

"Whilst, however, it is clear to our minds that water stations and depots of the company are not subject to taxation, we cannot but come to a different conclusion with regard to that portion of the property returned in south-east ward, which is occupied by the company, for the manufacture, construction, and repair of the locomotives, cars, and other machinery used upon the railroad ; and that, notwithstanding the case stated admits that it is necessary for the proper transaction of the business of the company.    Certainly, it is necessary that locomotives and cars should be manufactured, constructed, and repaired ; but the right to do all that is not 'necessary or incident to the making and maintaining of the railroad, and the conveyance of passengers, and the transportation of the mails and of goods, commodities and merchandise thereon.'    The *proviso* at the end of the second section of the act of incorporation excludes the company from banking privileges, and from any other liberties, privileges, or franchises, but such as are so, as before mentioned, necessary or incident.    The legislature certainly never intended to add manufacturing privileges to the great ones already conferred upon this company.    If the company may manufacture iron and wood into locomotives and cars for their own use, they may also manufacture rails, &c., and then, as iron and wood and coal are necessary to these processes, the company may purchase iron mines, and forests and coal mines, and may erect furnaces, and forges, and

rolling-mills; and thus, under the interpretation of the charter here contended for, subtract a large amount of property from taxation, and become besides a gigantic manufacturing corporation. The legislature never intended that, nor have they granted it. Neither the proviso above cited from the second section, nor yet the words of the twelfth section, authorizing the company to 'enter upon and occupy land for the erection of its engine and water stations, weigh-scales, or any other purpose necessary or useful in the construction and repairs of said railroad,' will justify such an interpretation. The letter and the spirit of the act look not beyond the road itself —to construct, govern and keep which in repair, are the particular functions of the company. The railroad in the legislative view, as well as in the ordinary sense of the words used in the charter, is entirely distinct from the means of transportation used upon it; and the right to construct and repair the road cannot include a right to construct and repair those means of transportation. If these views are correct, then so much of the property in the south-east ward as is owned and used by the company as a workshop, for the manufacture of its locomotives, &c., is not necessary or incidental to the enjoyment of any of the liberties, privileges, or franchises of the company—is no part of the road itself, and is not necessary or useful in the construction and repairs of the road, and is consequently a proper subject of taxation.

"The property in south-east ward is valued in the assessment in gross, and we have no means of apportioning the valuation between the workshop, which is, and the passenger depot, which is not, liable to assessment for taxation.

"With regard to the property in north-east ward, consisting of twenty-two and three-quarter acres, so much of it as is occupied for the purposes of a freight depot, wood and coal-yard, coal-shutes and an oil office, is not liable to an assessment for taxation. The ten acres, parcel of this and intended to be used for similar purposes, are in our opinion liable to taxation until they are so used. We have no means of apportioning the value of this property.

"The depot in Centre township, and the water stations in Upper Bern, are not liable to assessment for taxation.

"Let judgment be entered for the plaintiff."

Errors assigned by the Railroad Company:

1. The court erred in giving judgment, that the property in south-east ward was liable to assessment and taxation.

2. The court erred in giving judgment that any part of the property in north-east ward is liable to taxation.

3. The court erred in giving judgment for the plaintiff, the County of Berks.

Errors assigned by the County of Berks:

The court erred in not giving judgment in favour of the said county on the whole case stated.

*Strong*, for the Railroad Company, cited, act of 15th April, 1834, Dunlop's Digest, 558; act of 29th of April, 1844, Ibid., 918, and act of 22d April, 1846, Ibid., 975, and contended that the property of the company stated and enumerated in the record, was not subject to assessment for taxation, under said acts, either for state or county purposes.   He also cited the act of incorporation of the company, passed the 4th of April, 1833, Pamphlet Laws, 144, sections 2, 11, 12, and 20, by which, depots, or engines and water stations, are made, in express terms, part of the road.   He argued, that depots, machine shops, engine and water stations, were accessory to the railroad, and indispensably necessary to the proper and full enjoyment of the rights and privileges conferred upon the company by the act of incorporation.   He also cited the case of The Lehigh Coal & Navigation Company *v.* Northampton County, 8 Watts & Serg. 334, which he contended ruled this case.

*Smith* and *Filbert*, contrà.

*June* 26.   BURNSIDE, J.—The judgment of the Court of Common Pleas on the case stated, is brought before us on writs of error sued out by both parties.   They have been argued together, and involve the construction of a portion of the tax laws of this Commonwealth.   The judgment of the court below is predicated on the opinion of this court, in their construction of the act of the 25th of April, 1844, in the case of the Lehigh Navigation Company *v.* Northampton County, 8 Watts & Serg. 334.   So far as the cases are parallel, the judgment of the court is right.   But there is a wide difference between things appurtenant and convenient to a railroad, and things appurtenant and part of a canal.   It is contended, that the act of the 22d of April, 1846, embraces within its provisions, property returned in this case for taxation, which was not included in the act of 1844.   The act of 1844 is comprehensive in its terms, and embraces, of real estate, "all houses, lands, lots of ground and ground-rents, mills and manufactories of all kinds, all furnaces, forges, bloomeries and distilleries, sugar-houses, malt-houses, breweries, tan-yards, and ferries."   The first section of the act of the 22d of April, 1846, after enumerating for taxation certain articles of personal property not before taxed, pro-

ceeds: "And upon all property, real or personal, not taxed under existing laws, held, owned, or invested by any person, company or corporation, *in trust* for the use, benefit, or advantage of any other person, company, or corporation: excepting, always, such property as shall be held *in trust* for religious purposes." The object of the legislature is clear and manifest, that their intention, in this part of the act, was only to include certain *trust estates*, as they were aware of the opinion of the court in 8 Watts and Serg., before cited. It is only such property belonging to corporations, and is appurtenant and indispensable to its construction and fitting it for use, that can claim to be exempt from taxation. In the case before us, it is not enough that it is a convenient possession, or that it affords facilities in carrying on the business of the company. This valuable and extensive corporation, operating through a large extent of country, and doing an immense business at many points on the road, must necessarily employ many agents, as well as the occupation of houses and grounds to transact their legitimate business. It would no doubt be desirable and convenient to the company to own extensive warehouses, coal-yards, board-yards, coal-shutes, and extensive machine shops, at many points and places on the road. But these erections and conveniences form no part of the road. They are necessary and indispensable facilities to increase the business on the road, and to enable the company to make profits. We are not to be understood as interfering with the principles settled in the case of the Lehigh Navigation Company against Northampton County. But we are not for carrying exemption from taxation, or immunities to corporations, beyond that case. The judge was right in determining that the water stations and depots of the railroad were not taxable. We understand depots so exempt from taxation, as the offices, the oil houses and places to hold cars, and such buildings and places as may fairly be deemed necessary and indispensable to the construction of the road. Warehouses, coal-lots, coal-shutes, machine shops, wood-yards, and such places, form no part of the construction of the road. They are only indispensable to the profits to be made by the company, and are legitimate subjects of taxation within the act of 1844. They are not appurtenant to the road, but to the business done upon it. So far, then, as this opinion changes the opinion of the Common Pleas, on the case stated, the judgment is reversed, but no further.