# The Oakland Railway Company *versus* Keenan.

1. A certiorari to remove proceedings before two justices to recover possession of land bought at sheriff's sale, brings into the Common Pleas nothing but the record of the proceedings before the magistrates and jury, and on writ of error nothing else is before the Supreme Court.

2. By 72d section of Act of June 16th 1836 (Executions), solvent corporations are subject to the ordinary forms of execution.

3. All the provisions of the act for delivering possession to the purchaser at sheriff's sale apply the same in corporation cases as in others.

4. The finding of the inquisition that legal demand for possession had been made by the purchaser is conclusive of the question of notice.

5. A corporation exists in legal contemplation for the public benefit, and can be put out of existence, or stripped of what is essential to its existence, only by public authority and not by a private suitor.

6. If a railroad company be interrupted in the exercise of its franchises by the levy and sale of a private creditor, he would be restrained and denied the remedial provisions of the Act of 1836.

[Oakland Railway Co. *v.* Keenan.]

7. A purchaser at sheriff's sale of land of a railway company, subject to the servitude of their right of way, &c., is entitled to obtain possession of his purchase under the provisions of the Act of 1836.

November 6th 1867. Before WOODWARD, C. J., THOMPSON, STRONG, READ and AGNEW, JJ.

Error to the Court of Common Pleas of *Allegheny county:* No. 96, to October and November Term 1866.

This case originated in proceedings before two aldermen by Thomas J. Keenan, to obtain possession of certain real estate purchased by him as the property of the Oakland Railway Company.

The Pittsburg and East Liberty Passenger Railway Company was incorporated April 8th 1859 to construct a railway from Market street, Pittsburg, to a point named in the village of East Liberty, with the usual privileges granted to such companies, including the power of taking and holding the real and personal estate necessary and convenient for carrying on the traffic on their road and other purposes of their incorporation, &c., and to sell and mortgage the same, &c. Another Act of April 10th 1862 gave this company power to use, for the purposes of their railway, portions of " Shady Lane," and to extend their road from East Liberty to " Point Breeze," and thence to Wilkinsburg.

The Oakland Railway Company was incorporated February 27th 1863, with like privileges and power to hold real estate as the Pittsburg and East Liberty Railway Company, to construct a road, or " to purchase any railway now constructed on the routes hereafter mentioned," viz., from the intersection of South and Grant streets, Pittsburg, to Point Breeze, with the same power to use " Shady Lane" and extend their road to Wilkinsburg as was given to the Pittsburg and East Liberty Company. The Oakland Company constructed a new road over parts of their route, and purchased the tracks, &c., of the Pittsburg and East Liberty Company over other parts of the route. They also. purchased a tract of 8 acres of land near Point Breeze and East Liberty.

The right and interest of the Oakland Railway Company in this tract was levied upon by the sheriff under a fi. fa. on a judgment in favor of John Fielding, " subject to the rights of the said railway company to lay, keep and retain its railway tracks over said land," and purchased by Thomas J. Keenan, the defendant in error under the subsequent venditioni exponas, on the 27th day of January 1865 ; the sheriff's deed was acknowledged January 25th 1866.

On the 2d day of March 1866, Keenan gave notice to the president and 'the superintendent of the railway company to

deliver him possession of the premises in three months.   Possession not being delivered, Keenan, on the 28th of June 1866, applied to two aldermen to summon a jury to give him possession, as provided by the Act of Assembly.   A jury was accordingly summoned, who, on the 2d July 1866, appeared before the aldermen, and at the request of the company's counsel, the hearing was adjourned until the 9th of the same month, when the company filed with the aldermen the following exceptions, viz. :—

" 1. The property claimed by T. J. Keenan in this case was bought by the Oakland Railway Company for railroad purposes, under its charter, is now, and has been since its purchase, used by said company for railroad purposes, and is absolutely necessary for their railroad purposes.   It could not, therefore, be legally levied upon and sold under an ordinary execution ; and the said Keenan having no legal or vested title by virtue of his alleged purchase, cannot recover possession by these proceedings.

" 2. The Oakland Railway Company had no demand or notice served on them as prescribed by law, the notice produced and sworn to by the constable being simply a demand upon Augustus Hoeveler, and not upon the Oakland Railway Company."

Also this affidavit :—

" Augustus Hoeveler on oath says, that he is the president of the Oakland Railway Company ; that the property which is claimed by T. J. Keenan under an alleged sale by the sheriff, and to get possession of which proceedings are now pending, was purchased by said company for the uses and purposes of said road and is so held by the said company, and the same is necessary for the present and prospective uses and requirements of said road ; that the tracks of said road are laid over a part of the same, and are daily used and have been for two years past; that the said company have no other grounds in the village of East Liberty for a station-house ; that it was and still is the design of said company to use a part of said grounds for a station-house, a part for some side tracks, for stables, for pasturage for horses and house for dummy engine, and that the grounds and buildings will be all needed in the course of time for the proper and legitimate purposes and uses of said company, if the road should increase, as it may reasonably be expected."

On these papers the company asked the aldermen to dismiss the case, which request was overruled.   Having proceeded in the case, the jury found that Keenan purchased the premises at sheriff's sale, subject to the above-mentioned rights of the railway company ; that the company was then in possession and was the defendant as whose property the premises were sold ; that on the 2d of March 1866 Keenan did " demand of and require the said Oakland Railway Company to surrender unto him possession

[Oakland Railway Co. v. Keenan.]

of the premises," and that the company refused to comply with the demand. The jury assessed the damages against the company for the detention at $700, with costs.

The aldermen, the same day, made a record of the finding and gave judgment in favor of Keenan for the damages and costs. ·

On the 14th of July the company sued out a certiorari from the Court of Common Pleas, and filed the same exceptions as they had filed with the aldermen, and an additional one, viz.:—

" 3. The affidavit of the president of the railway company, alleging that the property was in actual use by the railway company, and was necessary for railway purposes, was sufficient to arrest the proceedings before the justices and put the claimant to his action of ejectment to try that question."

The court overruled the exceptions, and affirmed the proceedings; which the company assigned for error, having removed the case to the Supreme Court. ·

*J. W. F. White*, for plaintiffs in error, cited Plymouth Railroad *v*. Colwell, 3 Wright 337 ; Shamokin Railroad *v*. Livermore, 11 Id. 465 ; Ammant *v*. Turnpike, 13 S. & R. 210 ; Lehigh C. and N. Co..*v*. Northampton County, 8 W. & S. 334 ; Susq. Canal Co. *v*. Bonham, 9 Id. 27 ; Railroad *v*. Berks County, 6 Barr 70 ; Navigation Co. *v*. Commissioners, 1 Jones 202 ; Wayne County *v*. Del. and H. Canal Co., 3 Harris 351 ; Knox *v*. Herod, 2 Barr 26 ; Newell *v*. Gibbs, 1 W. & S. 496 ; Elliott *v*. Ackla, 9 Barr 42 ; Lenox *v*. McCall, 3 S. & R. 95 ; Hall *v*. Henrie, 2 Watts 143 ; Kimball *v*. Kelsey, 1 Barr 183 ; Walker *v*. Bush, 6 Casey 352 ; Brownfield *v*. Braddee, 9 Watts 149 ; Snavely *v*. Wagner, 3 Barr 275 ; Acts of June 16th 1836, §§ 105–118, Purd. 450, 451, pl. 128–141, Pamph. L. 780–782, March 21st 1772, § 12, Purd. 613, pl. 18, 1 Sm. L. 373.

*B. F. Lucas*, for defendant in error, cited Commonwealth *v*. The Erie and N. E. Railroad Co., 3 Casey 339 ; Plymouth Railroad *v*. Colwell, 3 Wright 337 ; Carr *v*. Wallace, 7 Watts 394 ; McKelvey *v*. Truby, 4 W. & S. 323 ; Willis *v*. Swartz, 4 Casey 413 ; Act of June 16th 1836, § 72, Purd. 199, pl. 37, Pamph. L. 774, § 105–118, *supra ;* Union Canal Co. *v*. Keiser, 7 Harris 137.

The opinion of the court was delivered, November 18th 1867, by
WOODWARD, C. J.—This was a certiorari in the court below to remove the proceedings had before two justices of the peace and a jury of twelve men, to recover possession of real estate purchased at a sheriff's sale. The certiorari brought into the Common Pleas nothing but the record of the proceedings before the

[Oakland Railway Co. *v.* Keenan.]

magistrates and jury, and nothing else is before us, of course, upon this writ of error.

From that record, it appears that Thomas J. Keenan, on the 27th January 1865, purchased at sheriff's sale a certain tract or parcel of land containing eight acres, more or less, and subject to the rights of the said Oakland Railway Company, to lay, keep, and retain its railway tracks over said land ; that said company is now in possession of said premises, and was the defendant as whose property it was sold ; that said Keenan demanded possession of said premises, by notice to said company on the 2d March 1866 ; and that they refused to surrender up and deliver the possession. The record then goes on to recite regular legal proceedings before the aldermen, and concludes with a judgment in favor of Keenan for the premises, and his costs and damages. Accompanying the record is the inquisition taken by the justices and the jury, finding all the facts required by the Act of 16th June 1836, relating to executions : Purd. 450.

Strictly speaking no question is raised upon this record, except whether the provisions of the Act of 1836, for obtaining possession of real estate sold at sheriff's sale, applies to corporations, and on that question we have no doubts. In Reed *v.* Penrose, 12 Casey 240, will be found an exposition of the 72d section of the act, from which it will be seen that whilst sequestration is provided for insolvent companies, solvent companies are subject to the ordinary forms of execution.

If no sufficient personal property is found, an execution against a corporation is to be levied upon its real estate, and the officer shall " thereupon proceed in the manner provided in *other cases* for the sale of land upon execution." The other cases referred to here, are cases of execution against judgment-debtors, who are natural persons. The 105th section provides, " that whenever any lands or tenements shall be sold by virtue of any execution aforesaid," the purchaser shall have summary process to obtain the possession. These comprehensive expressions, " any lands" and " any execution aforesaid," include proceedings against the lands of corporations which are prescribed in the prior sections. In a word, the Act of 1836 applies to executions against solvent corporations in the same manner as it applies to executions against individuals, and of course all the provisions for delivering possession to the purchaser at sheriff's sale have the same application in corporation cases as in others.

The proceedings may be arrested by making the oath prescribed by the 116th section of the act, but neither that oath nor anything to the same effect was offered. The company made two objections to Keenan's proceedings before the justices—the first of which was, that they held the land for railroad purposes under its charter, and therefore it could not be legally sold upon execu-

tion; and second, that no demand or notice had been served upon them according to law. This second objection may be disposed of at once, by saying that the inquest concludes the question of notice. The company appeared before the justices and jury, and it was there found that legal demand had been made—a finding which, in the present posture of the case, excludes further inquiry upon that point.

As to the first objection, it ought to be sufficient to say that it does not suggest the ground for arresting the proceedings which the Act of Assembly provides. Neither the objection before the justices nor the president's affidavit, conformed to the statute, and they were properly overruled. As to the other more grave objection, that the land being held for railroad purposes could not be sold, we must take the fact to be established, that what was sold by the sheriff and bought by Keenan was no part of the railroad nor any indispensable appurtenant: for undoubtedly the corporation being established by law, and existing in legal contemplation for the public benefit, it can only be put out of existence or stripped of what is essential to its existence by public authority, and not by private suitors: Railroad Co. v. Caldwell, 3 Wright 337; Shamokin Co. v. Livermore, 11 Id. 465. And if the case before us presented an instance of a railroad company interrupted in the exercise of its corporate franchises by the levy and sale of a private creditor, we would restrain him, and if necessary would deny him the remedial provisions of the Act of 1836.

But such is not this case; without going outside of the record, as the argument did, to discover whether the company have any charter authority to build or enjoy a railroad upon the ground in question; assuming, as we do, that the company's railroad was lawfully built, and has a right to be where it lies, the record shows that it was not bought by Keenan, is not claimed by him, and no possession of it is sought. What he purchased was the company's title to the land, subject to the servitude of their right as a railroad company. So was the levy and sale, and such is the form in which Keenan must enjoy his purchase.

In this state of the record, of what has the company to complain? Not of deforcement from any premises that are essential to their corporate existence, for they are expressly saved. Not that land held by them beyond their corporate necessities was levied and sold, for corporations hold all such lands subject to the legal process of their creditors in the manner of other debtors. Not that the proceedings were had under the Act of 1836, for it expressly includes corporations, and the proceedings were in substantial accordance with its provisions. In a word, if the case be judged by the record, and we know of no other way of judging it, some of the questions suggested by the assignment of errors

do not arise, and of nothing that was done has the company any just cause of complaint.

As a consequence of holding the act of 1836 applicable to corporations, it may be that inconveniences may result to railroad companies; for possibly levies and sales may be made of necessary appurtenances, and the freeholders' court may sever them and deliver them to the purchasers. If there is danger of this, the legislature can remedy it by providing that the courts shall ascertain and fix the necessary curtilage of railroad companies, after the manner of the Mechanics' Lien Law, before a creditor shall be permitted to make his levy. But whatever may be the theoretical danger to other cases, or the best remedy for it, no reason is perceived for reversing the proceedings in this case, and they are accordingly affirmed.