# The City of Philadelphia to use of John F. Pugh, to use of William Kelly, *v.* The Philadelphia & Reading Railroad Company, Owner and Registered Owner. Appellant.

*Municipal lien—Lack of special benefits as a defense—Rule and exception thereto.*

As a general rule the property owner cannot defend a suit to enforce a municipal claim on the ground that his property is not benefited by the improvement.

The exceptions to this general rule have arisen where the court was able to declare, as a conclusion of law from the facts proved, that no special benefits could accrue to the particular property, or to the class to which it belongs which would justify the assessment.

*Municipal lien—Averments—Question for jury—Railroads.*

An averment in an affidavit that a given lot was not connected with a sewer and was not specially benefited does not raise a question of fact for the jury;—neither do averments that the land "is an absolutely necessary part of the railroad;" that "without it the vast coal and iron traffic of the company could not be carried on;" that "it is as completely an essential integral part of the railroad of the said company as an intermediate section of the roadbed thereof;" and that "the possession of the whole

of the said large tract is indispensable to the enjoyment of the franchises of the said railroad company," raise questions of fact which a jury are called upon to decide.

### Railroad property—Liability to annual taxation and assessments.

The rule which is to be extracted from the authorities on the subject of the liability of railroad companies to ordinary taxation for local purposes, is that it is only so much of their property as is indispensable to the construction of the road and fitting it for use which is exempt, and not all which they can lawfully take or hold under their charters.   It is not enough that it is a convenient possession affording facilities in conducting the business of the company and enabling it to make money.

### Local assessments—Exemption—Rule governing such cases.

It does not follow that all property necessary to the successful operation of a railroad is part of the franchise, so that the statutes relating to assessments for local improvements may be said not to contemplate making such property liable.

There does not appear to be any difference, for purposes of taxation, between an intermediate section and sections at the end of a roadbed, but it does not follow that the whole of a terminal lot is a part of the roadbed or is in the same sense an integral and necessary part of the railroad.

There is manifest difference however between the roadbed, " that narrow strip of ground which forms the right of way of a railroad, and a lot of land owned in fee and traversed by the tracks of a railroad company, but part of which lot is but ' a convenient possession affording facilities in conducting the business of the company.' "

### Municipal liens—Liability of terminal yard.

A claim for sewer was filed against land of the defendant, a railroad company, described in the affidavit of defense as the coal and iron terminal of the company ; the main tracks of the company entered the tract and by numerous branches and switches led to the wharves where coal and iron are loaded and unloaded from and into cars.   A greater portion though not all of the lot in question is traversed by these tracks.   *Held*, (1) That the construction of laws regulating the ordinary annual taxation of property would not exempt such lot as a whole from taxation.   (2) That having regard for the principle or reason upon which this construction is based, and to it alone, it does not apply to a statute authorizing municipal assessments for local improvements which are imposed and collected as an equivalent for the benefits received.

Land of a railroad company may be liable to such assessment although it might not be to ordinary annual taxation.

### Municipal liens—Railroad property—Enforcement of judgment.

The remedy for the enforcement of municipal assessment being a proceeding in rem, the question of the possibility of such enforcement against railroad property bears directly upon the intention of the legislature and is therefore entitled to consideration, but where lands of a railroad beyond

what are necessary for enjoyment and exercise of the corporate franchise are liened they are bound by the lien of the judgment, and may be sold as lands of any other debtor. It would seem that a power exists in the courts to so regulate such a sale as to protect the corporation in the possession of all that is essential to the enjoyment of its franchise and at the same time to protect the city and other abutters in their rights.

Argued December 16, 1895. Appeal No. 5, Nov. T., 1895, by defendant, from judgment of C. P. No. 4, Phila. Co., March T., 1895, No. 139, M. L. D., for want of sufficient affidavit of defense. Before RICE, P. J., WILLARD, BEAVER, REEDER, WICKHAM, McCARTHY and ORLADY, JJ. Affirmed.

Sci. fa. sur claim $779.36 for sewer on Richmond street in front of lot of ground on southeast corner Richmond and William streets. The affidavit of defense alleged inter alia as follows :

The said large tract of land is the terminus of the main line of the Philadelphia & Reading Railroad in the city of Philadelphia. The said railroad company was incorporated by act of assembly, approved April 4, 1833. In the latter part of the year 1837 the route of the main line of the railroad of said company from Flat Rock above Manayunk across the Schuylkill to the Delaware river at Port Richmond was adopted, and is the same now operated by said railroad company to the coal wharves at Port Richmond.

As appears by the said plan, which is an accurate representation of the place, it is covered throughout with a great number of diverging railroad tracks, the said main line entering the property near Somerset street, and spreading out and running to the ends of the wharves, some twenty in number, whereby coal is shipped into vessels for export, and iron ore is received from vessels bringing the same here and loaded into the cars for inland transportation. Engines traverse all the tracks as upon other parts of the railroad.

The said lot of ground is an absolutely necessary part of the railroad of the said company. It is the only point in the city of Philadelphia at which the coal transported over the Philadelphia & Reading Railroad, and which comprises the greater part of its trade, reaches tidewater in this city. Without it the vast coal and iron traffic of the company could not

be carried on. It is as completely an essential, integral part of the railroad of the said company as an intermediate section of the roadbed thereof. The possession of the whole of the said large tract is indispensable to the enjoyment of the franchises of the said railroad company.

And the said defendant suggests that the effect of sustaining the claim filed in this case would be, in case of nonpayment thereof, to permit the lot liened to be levied upon and sold, and thereby to dismember the railroad and franchises of the said company, which the law of the commonwealth does not permit to be done.

There is no connection between the said lot and said sewer. The said lot does not receive any special benefit whatever from the construction of the said sewer. The use of the property for railroad purposes alone is such that it cannot possibly be benefited by the construction of the said sewer.

On July 20, 1895, the court entered judgment for want of sufficient affidavit of defense for $830.21. ARNOLD, J., filing the following opinion:

In this case, a municipal claim for the construction of a sewer, the defense is that the lot of ground liened is used as the tidewater coal and iron ore terminal of the Philadelphia & Reading Railroad Company, and is covered with a great number of diverging railroad tracks, whereby coal is shipped into vessels for export, and iron ore is received for inland transportation.

A plan submitted in argument shows that this lot is the coal-shipping depot of the Philadelphia & Reading Railroad Company, such as was at an early day held liable to annual taxation in the case of this same Railroad Co. v. Berks Co., 6 Pa. 70; Wayne Co. v. Delaware & Hudson Canal Co., 15 Pa. 351; and also by special statute in this county. Act of April 21, 1858, P. L. 385. When property is subject to annual taxation it is also subject to special taxes for municipal improvements; but a property may be liable to special taxes for improvements while it may not be liable to annual taxation.

We have considered a similar defense in the case of the City v. The North Penna. R. R. Co., 4 Dist. Reps. 451, of the same term as the present case, and on that opinion give judgment for the plaintiff. Rule absolute.

*Error assigned* was entry of judgment in favor of the plaintiff.

Thomas Hart, Jr., for appellant.—The roadbed of a railroad company is not liable to municipal lien: City Phila. v. P. W. & B. R. R., 33 Pa. 41; Junction R. R. v. City, 88 Pa. 424.

There is no distinction now recognized between the parts of the railroad the title to which has been acquired in fee and those parts acquired by condemnation: Penna. Sch. Val. R. R. Co. v. Reading Paper Mills, 149 Pa. 18; Pitts., Ft. Wayne & C. R. R. Co. v. Peet, 152 Pa. 488. The tract liened is a part of the main line; its necessary and indissoluble connection with the operation of the road was considered by the legislature to be such that it must be forever preserved from being cut up into sections by the opening of streets through the same. See also case of Audenried v. Phila. & Reading Railroad, 68 Pa. 370. Such tracts of land as this are in fact and in law parts of the railroad itself. R. R. Co. v. Williams, 54 Pa. 103; R. R. Co. v. Speer, 56 Pa. 325; R. R. Co. v. Black, 58 Pa. 249, which arose out of the building of one of the defendant's tracks, running through this very lot, across William street: Getz v. R. R. Co., 10 W. N. C. 453. The question of special benefits never enters into the subject of liability for annual taxation. The late cases upon this subject have indeed confined assessments where benefits arise from local improvements to properties immediately adjoining the improvements, which must appear to confer peculiar local benefits upon the property assessed: Morewood Avenue, 159 Pa. 20; 54th Street, 165 Pa. 8; Park Avenue Sewers, 169 Pa. 433; Witman v. City Reading, 36 W. N. C. 528. The learned judge was equally in error in the statement, in the opinion in this case, that the cases of Railroad Co. v. Berks Co., 6 Pa. 70, and Wayne Co. v. Del. & H. Canal Co., 15 Pa. 351, sustain the liability of a property, such as that in this case, to annual taxation under a general statute. An examination of those cases shows directly to the contrary. It was very early decided that a railroad and its necessary appurtenant work was not taxable as land or real estate: Leh. C. & N. Co. v. Northampton, 8 W. & S. 334; Railroad Co. v. Berks Co., 6 Pa. 70; Wayne Co. v. Del. & H. Canal Co., 15 Pa. 351. On the question of annual taxa-

tion of railroad property, see Penna. R. R. v. Vandyke, 137 Pa. 249, approving East Penna. R. R. Co.'s Case, 1 Walk. 428, and Northumberland v. P. & E. R. R., 20 W. N. C. 381. It was a principle of this line of cases which was held to apply to cases of municipal assessment: City v. P. W & B. R. R., 33 Pa. 41, and Junction Railroad v. City, 88 Pa. 424. If the lien in the case now before the court can be sustained, of course the property liened ought to be able to be sold and title passed to the purchaser, but that cannot be. The franchises of a corporation cannot be sold piecemeal under executions: Graham's Executors v. P. & O. Canal Co., 3 Pitts. L. J. 341; Canal Co. v. Bonham, 9 W. & S. 27; Bayard's Appeal, 72 Pa. 453; Longstreth v. R. R., 11 W. N. C. 309; Comm. v. S. & Del. R. R., 122 Pa. 306. Lands necessary for the enjoyment and exercise of a corporate franchise are parts of it, and cannot be levied on apart from it: Plymouth R. R. v. Colwell, 39 Pa. 337; Shamokin V. R. R. v. Livermore, 47 Pa. 465.

A railroad with its right of way, embankments, excavations, iron rails, switches, depots, engine house, etc., is, in a certain sense an entirety, extending from one terminus to the other: City of Dubuque v. R. R. Co., 47 Iowa, 202.

A railroad is an entire thing, not legally subject to coercive severance or dissolution: E. & P. R. R. Co. v. Elizabethtown, 12 Bush (Ky.), 238; Porter v. R. R. Co., 76 Ill. 584.

It was knowledge of this principle that led to the passage of the act of April 7, 1870, section 1, P. L. 58.

See this act commented upon in Allegheny City v. West. Penna. R. R. Co., 138 Pa. 375.

*John M. Ridings*, for appellee.—Much of the argument of the appellant might be worthy of serious attention if this case had arisen prior to the decision of the Supreme Court in Church's Appeal, Broad Street, 165 Pa. 477. Prior to that decision exemption from taxes had been considered to extend to municipal assessments for sewers and the class of property exempt from taxes under the act of April 16, 1838, P. L. 525, but in Broad Street above cited, the Supreme Court followed Railroad Co. v. Decatur, 147 U. S. 190.

Even prior to the act of 1858 the plaintiff's contention is ruled by case of Commissioners of Wayne Co. v. Del. & Hud.

242          PHILA. *v.* P. & R. R. CO., Appellant.

Arguments—Opinion of the Court.          [1 Super. Ct.

Canal Co., 15 Pa. 351; Railroad v. Berks Co., 6 Pa. 70.   As to the arguments suggested in regard to the difficulty of collecting the claims, it is said by the learned court below in their opinion that the question has already been passed upon in the Supreme Court in case of Berks Street, 12 W. N. C. 10; Howard Street, 142 Pa. 601.

OPINION BY RICE, P. J., February 20, 1896 :

The lien in question was filed against a lot owned by the defendant company, in fee, at the corner of Richmond and William streets, containing in front, on Richmond street, five hundred and fifty-five feet, and extending in depth southeasterly, along William street, to the Port-Warden's line in the Delaware river.

The lot is part of a larger tract extending from Cumberland to William street, and from Richmond street to the Delaware river, and containing in front, on Richmond street, in the neighborhood of twenty-eight hundred feet.  It is described in the affidavit of defense as the coal and iron terminal of the defendant company, and it appears by the draft attached to, and made part of, the affidavit, that the main tracks of the company's railroad enter the tract at a point to the south of the lot in question, and thence by numerous diverging branches and switches lead to the wharves, some twenty in number, where coal is loaded into vessels for export, and iron ore is received from vessels and loaded into cars.

A great portion of the particular lot is traversed by these tracks, but not all of it.   On the Richmond street front there appears to be a considerable space of varying depth, but extending across the whole front of this lot, which is not occupied by tracks.   In this space the map shows a small building designated as superintendent's office, a larger building not described, and the "Dodge Coal Storage Plant."   We are not informed what this plant is, but assume that it is what its name implies, a place for the storage of coal, and that it is owned and used by the defendant company.   The averment in the affidavit that the lot is covered throughout with a great number of diverging railroad tracks must be taken with the foregoing qualification which an inspection of the map makes necessary.

The validity of laws authorizing cities and boroughs to curb

and pave streets, build sewers and culverts, and lay water pipes, and to apportion and assess the cost upon abutting properties according to their frontage has been repeatedly recognized both before and since the adoption of the present constitution. It is unnecessary to cite the cases. This species of taxation is justified upon the presumption, generally well founded in experience, that special benefits are conferred upon such properties which equal or exceed the assessments, and that "frontage is the proper measure of probable benefits." Hence, as a general rule, the property owner cannot defend a suit to enforce the claim on the ground that his property is not benefited by the improvement. Said PAXSON, J., in Michener v. Philadelphia, 118 Pa. 535, "And it would be intolerable, if, in every instance of special taxation, the question of benefits could be thrown into the jury box. It would introduce into municipal government a novel and dangerous feature. It would substitute for the responsibility of councils, limited though it be, the wholly irresponsible and uncertain action of jurors." The general rule as to the conclusiveness of the assessment upon the question of benefits has been applied or recognized in a large number of cases, amongst which may be mentioned: City v. Tryon, 35 Pa. 401; Stroud v. City, 61 Pa. 255; Harrisburg v. McCormick, 129 Pa. 213; Allegheny v. R. R. Co., 138 Pa. 375; Oil City v. Oil City Boiler Works, 152 Pa. 348; Philadelphia v. Thomas' Heir, 152 Pa. 494–497; McKeesport v. Busch, 166 Pa. 46; Philadelphia v. Odd Fellows Hall, 168 Pa. 105; Witman v. Reading, 169 Pa. 375–389. It is true there are exceptions to this general rule, but upon examination it will be seen that they have arisen where the court was able to declare, as a conclusion of law from the facts proved, that no such special benefits could accrue to the particular property, or to the class to which it belonged, which would justify the assessment. The cases of assessment of rural property belong to this class, and the question whether the land is rural or urban, in regard to its liability to assessment according to the foot front rule, is usually for the jury, because it is one of fact; but where the facts are agreed upon, it becomes one of law for the court: Reading v. O'Reilly, 169 Pa. 366. I recall no case where an averment in an affidavit of defense that the defendant's lot was not connected with the sewer, and was not specially benefited

by it has been held sufficient, of itself, to prevent judgment. If the court erred in adjudging the affidavit of defense insufficient, it was not because this averment raised a question of fact for the jury. Nor do we think the court could have declared, as matter of law, that property situated as this is could not be, and was not, benefited by the public sewer in the street in front of it.

In this connection we remark also that the averments in the affidavit of defense that the land "is an absolutely necessary part of the railroad of said company;" that "without it the vast coal and iron traffic of the company could not be carried on;" that "it is as completely an essential integral part of the railroad of the said company as an intermediate section of the roadbed thereof;" and "that the possession of the whole of the said large tract is indispensable to the enjoyment of the franchises of the said railroad company," raise no questions of fact which a jury are called upon to decide. The last averment raises a question of law which the court is to decide upon a view of all the facts; and, as to the averment preceding it, it seems sufficient to say, that it is a mere deduction or inference from the other facts alleged, which derives no additional force from being sworn to. It is for the court to say whether or not, in view of all the facts alleged in the affidavit and shown by the map attached thereto, it is a necessary or legitimate inference, and whether land held in fee and used as this is, is to be treated for purposes of assessment the same as the roadbed of a railroad company. We have no doubt the facts are stated fully, but if there are other facts not stated, from which the foregoing conclusions are drawn, they should have been set forth in the affidavit.

We come then to the main ground of defense, which, broadly stated, is, that all property necessary to the operation of a railroad is part of the franchise, and the statutes relating to assessments for local improvements do not contemplate making such property liable.

If this proposition is sound, it is immaterial whether the property of the railroad company was specially benefited by the improvement or not. It might be the depot at Twelfth and Market streets or the Pennsylvania terminal on Broad street which would be as clearly benefited by the paving of the streets

upon which they front or the construction of a sewer therein as any property of any private citizen on the same streets, and yet, because the property is necessary to the operation of the railroad, it would not be liable to assessment for any portion of the special benefits it received, if the defendant's position is correct. It is to be observed also, that this asserted nonliability of such property results, not from want of power in the legislature, not from any constitutional exemption of such property from general or special taxation, but from a supposed intention of the legislature not to make it liable. This intention is not discoverable by a mere reading of the statutes under which the assessments are made, but is arrived at by drawing an analogy between them and ordinary taxation, and by a consideration of the obstacles, supposed to be insurmountable, in the way of an enforcement of the claim by a proceeding in rem.

The principle of nonliability of specific property of a railroad company to ordinary taxation extends to the roadbed and such buildings and erections as are necessary to the railroad as such, without which it would not be a complete and perfect railroad. "The rule which is to be extracted from the authorities on the subject of the liability of railroad companies to taxation for local purposes, is that it is only so much of their property as is indispensable to the construction of the road and fitting it for use that is exempt. It is not all which they can lawfully take or hold under their charters. It is not enough that it is a convenient possession affording facilities in conducting the business of the company and enabling it to make money." SHARSWOOD, J., in East Penn R. R. Co.'s Appeal, 1 Walk. 428, quoted with approval in Penna. etc. Railroad Co. v. Vandyke, 137 Pa. 249. This is substantially the rule laid down in R. R. Co. v. Berks Co., 6 Pa. 70. There is often difficulty in determining between indispensability and great convenience, but the rule itself has been adhered to with as great consistency and strictness as is possible in the application of such a principle to the varying facts of the many cases that have arisen, and the distinctions have been steadily kept in view, as will be seen by an examination of the leading and most carefully considered cases : L. C. & Nav. Co. v. Northampton County, 8 W. & S. 334; Wayne County v. D. & H. Canal Company, 15 Pa. 351; West Chester Gas Co. v. Chester

County, 30 Pa. 232; Coatesville Gas Co. v. Chester, 97 Pa. 476; Schuylkill Co. v. Citizens' Gas Co., 148 Pa. 162; Northampton County v. L. C. Nav. Co., 75 Pa. 461; Erie v. Erie Transportation Co., 87 Pa. 434; Penna. R. R. Co. v. Vandyke, supra; Roaring Creek W. Co. v. Girton, 142 Pa. 92; St. Mary's Gas Co. v. Elk Co., 168 Pa. 401. The decision in N. Y. & E. R. Co. v. Sabin, 26 Pa. 242, was largely influenced by legislation specially affecting the company, and the case of Northumberland v. P. & E. R. Co., 20 W. N. C. 381; S. C. 8 Cent. Rep. 531, was ruled upon the agreement as to the facts and does not overrule earlier cases, as is clearly shown by McCOLLUM, J., in R. R. Co. v. Vandyke. The same is to some extent true of Northampton Co. v. Easton Pass. Railway Co., 148 Pa. 282.

Applying these principles and endeavoring to follow the precedents, we confess we can see no difference for purposes of taxation between an intermediate section and a section at the end of a roadbed; and with our present information we are not prepared to say that the several diverging branches which lead to the wharves are not an integral part of the railroad. But it does not follow that the whole lot liened is a part of the roadbed or is, in the same sense, an integral and necessary part of the railroad. To say the least, the part on the Richmond street front is no more indispensable to the exercise of the defendant's corporate franchise than warehouses, coal lots, coal shutes, machine shops and wood yards (R. R. Co. v. Berks, supra), or the building used for receiving and transshiping goods and merchandise to and from the canal and railroad (Wayne Co. v. D. & H. Canal Co., supra), or repair shops, blacksmith shops, carpenter shops and paint shops (E. Penna. R. R. Co. case, supra, and R. R. Co. v. Vandyke, supra).

But, in determining whether this rule relative to the nonliability of property of quasi public corporations to ordinary annual taxation is to be extended to municipal assessments for local improvements, it will be well to consider the origin of the rule—so called for convenience—and the reasons at the foundation of it. For, as we have already suggested, there is nothing in the nature of land held for necessary purposes by a railroad or other quasi public corporation which prevents the legislature from taxing it as land. Nothing short of a constitutional inhibition could produce that result. The rule is but a

judicial construction of general tax laws, whereby the intention of the legislature is discovered, and it is not necessarily to be applied to other statutes relating to an entirely different species of taxation, unless the same reasons therefor exist; nor even then, if the intention of the legislature is not in doubt. If authority is needed for so plain a proposition, we need only refer to Penna. R. R. Co. v. Pittsburg, 104 Pa. 522.

The rule had its origin at a time when, as KENNEDY, J., said: " Canals and every species of improvement calculated to promote and facilitate the trade and commerce of the state have ever been considered a matter of public interest and concern, and instead of being made the subjects of taxation, have, on the contrary, been patronized by the legislature, in lending the aid of the state to their construction and subsequent preservation. . . . The profits derived therefrom have seldom as yet, I apprehend, amounted to what would in general be deemed a reasonable remuneration for the cost and expense of making such improvements: And possibly from this consideration, as well as motives of public policy, the state has never intentionally, I apprehend, attempted to tax such property: " L. C. & Nav. Co. v. Northampton, 8 W. & S. 334 (1845). In later cases an additional consideration was suggested, which is, that, in the absence of a clearly expressed intent, it is not to be inferred that double taxation is intended as to the indispensable property of a quasi public corporation: West Chester Gas Co. v. Chester, 30 Pa. 232; Allegheny Co. v. Diamond Market, 123 Pa. 164; N. Y. & E. R. Co. v. Sabin, 26 Pa. 242; Coatesville Gas Co. v. Chester, 97 Pa. 476; Mt. Pleasant Bor. v. B. & O. R. Co., 138 Pa. 365; Schuylkill Co. v. Citizens Gas Co., 148 Pa. 162. But the reasons for the rule, whether they be considerations of public policy, or the presumptions against double taxation, do not apply with the same force, if they apply at all, to municipal assessments such as this. If the latter are lawful at all, it is because the special benefits received are equal to, if not greater, than the charge, and the corporation thus benefited and thus charged is no more subjected thereby to double taxation than the private individual. After a very careful investigation of this question we conclude; first, that the contruction which has been given to the laws regulating the ordinary annual taxation of property would not exempt this lot, as

a whole, from such taxation; second, that, having regard to the principles, or reasons, upon which this construction is based, and to them alone, it does not apply to a statute authorizing municipal assessments for local improvements, which are imposed and collected as an equivalent for the benefits received. The learned judge who rendered the opinion of the court below was clearly right, both upon reason and authority, in saying, that land of a railroad company may be liable to such assessment although it might not be to ordinary annual taxation. Its nonliability to such assessment, if it is not liable, rests on different ground from its nonliability to ordinary taxation under general laws.

The remedy for the enforcement of the assessment is by sci. fa. and levari facias. It is a proceeding wholly in rem, and it is argued that a sheriff's sale of the lot liened would be against the policy of the law, which is to keep intact the property belonging to and essential to the operations of a public corporation, and it is not to be presumed, in the absence of express declaration, that the legislature intended to depart from this well settled policy. We do not underestimate the force and logic of the argument of the learned counsel of the appellant, and because it bears directly upon the question of the intention of the legislature it is entitled to consideration at this stage of the case. It was held sufficient to defeat mechanics' liens against a public schoolhouse of the first school district of Pennsylvania (Williams v. Controllers, 18 Pa. 275), and against the buildings necessary for carrying on the operations of an incorporated water company (Foster v. Fowler, 60 Pa. 27; Guest v. Water Co., 142 Pa. 610), and it was suggested as one of the reasons why a municipal lien for paving could not be sustained against the roadbed of a railroad company (Philadelphia v. P. W. & B. R. Co., 33 Pa. 41), although in later cases (Junction R. R. Co. v. City, 88 Pa. 424; City v. R. R. Co., 138 Pa. 375) the reason that such an improvement could by no possibility be a benefit to the roadbed was made more prominent and controlling. But we have here a different case from any of those cited. Lands of a railroad company, beyond what are necessary for the enjoyment and exercise of the corporate franchises, are bound by the lien of judgments against the corporation and may be sold as lands of any other debtor: Plymouth R. R. Co. v.

Colwell, 39 Pa. 337; Shamokin V. R. Co. v. Livermore, 47 **Pa.** 465. This was so even before the act of 1836, and as to such property the law was not changed by that act or the act of April 7, 1870, P. L. 58. In the course of a comprehensive review of the legislation upon this subject, Mr. Justice McCollum said: "but land not dedicated to corporate purposes or essential to corporate functions was liable to be levied upon and sold in the same manner as the land of other debtors. Land which, before the act of 1870, could be sold on execution under the act of 1836 is to be sold in the same manner and with the same effect now as then:" Greensburg Fuel Co. v. Natural Gas Co., 162 Pa. 78.

A railway company purchased a tract of eight acres, which was levied upon by the sheriff, under a fi. fa., "subject to the right of the said railway company to lay, keep and retain its railway tracks over said land," and sold under a subsequent vend. ex. It was held that the purchaser was entitled to obtain possession under the provisions of the act of June 16, 1836, P. L. 780. "What he purchased," said WOODWARD, J., "was the company's title to the land subject to the servitude of their right as a railroad company. So was the levy and sale, and such is the form in which Keenan must enjoy his purchase." The inconveniences which would result from allowing the purchaser this remedy were fully discussed, but were not thought sufficient to debar him. The case we refer to is Oakland Railway Co. v. Keenan, 56 Pa. 198. In the case of Junction R. Co. v. Phila., 88 Pa. 424, the lower court thought that inasmuch as the company owned the roadbed in fee a sale in enforcement of the lien might vest a title subject to the easement or the franchise of the company. In reversing the judgment, PAXSON, J., said: "The contention is that the company being the owner of the fee, the fee may be sold subject to the easement. But cui bono? Such a proceeding would be a vain thing. The fee is absolutely worthless subject to the easement." But it is manifest that the same reason could not be assigned in such a case as this. The fee of this lot subject to every easement and right of the company, which, under the decisions, are indispensable to the full enjoyment and exercise of its public franchise, would not be worthless; nor is it clear that such a sale upon levari facias would be any less effectual to pass the title to all

in excess of that than was the sale in Oakland Railway Co. v. Keenan, supra, or in Plymouth R. Co. v. Colwell, supra. Does not the power to stay ordinary process for the sale of property, indispensable to the exercise of the franchises of a quasi public corporation—a power which has been exercised frequently— include the power to regulate the sale in some such manner as that suggested by the learned judge below or in some other manner, so as to protect the city and other abutters in their rights, and at the same time protect the company in the possession of all that is really essential to the enjoyment of its franchise? If it became necessary, it would seem that the company could not consistently object to the exercise of a power which would be clearly for its benefit and protection; and is it not more reasonable to suppose that the court has such power in the exceptional case which arises out of the enforcement of a municipal claim, than to suppose that the right to file it fails because the remedy is inadequate or inconvenient? We think it is; for it is not readily to be supposed that the legislature intended the gross inequality that would result if all property of a railroad company, which, though "a convenient possession," is not indispensable to the exercise of its corporate franchise, should escape its proportionate share of the burden although it might be equally benefited with the property of other abutters. Certainly, the policy of the law does not tend in that direction, as is shown by the construction which has been given to constitutional and statutory provisions exempting property from taxation: Broad Street, 165 Pa. 475. We are not to be understood as saying that the exemption cases rule the present one. Nevertheless some of the principles which were considered important in determining the legislative intent in such statutes may be considered here, and amongst these is the principle of equality.

The language of BREWER, J., who delivered the opinion of the court in Ill. Cent. R. Co. v. Decatur, 147 U. S. 190–202, may be profitably quoted: "The local improvement has no relation to or effect upon that which the exempted property gives to the public as consideration for its exemption; hence there is manifest inequity in relieving it from a share of the cost of the improvement. So when the rule is laid down that the exemption from taxation only applies to taxes proper it is

not a mere arbitrary rule, but one founded upon principles of natural justice." So far as the case cited (Junction R. R. v. Phila.) bears upon the question at all, the decision is confined by its facts, and by the carefully expressed language of the court, to a lien for paving against the sixty feet roadbed of a railroad company. In such a case the question of remedy becomes immaterial, because: "This is the one species of property which it is conceded can derive no possible benefit from street improvements:" Allegheny City v. R. R. Co., 138 Pa. 375. We observe generally with regard to those two cases and the earlier case of Phila. v. P. W. & B. R. Co. that (1) the rulings are confined to what was strictly the roadbed; (2) no allusion is made by the Supreme Court to the principle upon which the nonliability of the property of the company to general taxation is based, although in the first case it was discussed in the court below; (3) the rulings are mainly based upon the ground that the improvements in question could not possibly be a benefit; (4) the court was careful *not* to decide or to intimate, that under no circumstances can a railroad be subject to municipal assessments for local improvements, and could not have done so without coming in conflict with other decisions and dicta.

"I have confined the discussion of this case to the matter of the roadbed. The question of the liability of other real estate of such corporations, such as depots, offices, shops and the like, to taxation and municipal assessments, is not raised by this record:" Junction R. R. Co. v. Phila., supra. "A railroad company may be liable for some municipal assessments:" Allegheny v. R. R. Co., supra. Viewers were appointed to assess damages and benefits caused by opening a street through lands of the company. The report was confirmed. Upon sci. fa. upon the municipal claim filed for the benefits assessed against the company, the latter defended upon the ground that the land had already been appropriated to a public use, to wit: for depot purposes. It was held that the company was concluded by the confirmation of the report of viewers: Western Penna. R. Co. v. Allegheny, 2 W. N. C., 229. A jury to assess damages caused by opening a street assessed a portion thereof on certain properties of two railroad companies, as follows: A lot occupied by their terminal passenger depot; a lot occupied by

their roundhouse, repair shops and blacksmith shop; a lot oc-
cupied by a nest of tracks for the storage of cars, by a freight
depot and repair shops belonging to them; a lot used as a
freight yard and freight depot.    Exceptions to the report were
dismissed, and on certiorari the Supreme Court said: "We
see no reason why the railroad company should not be liable
for any increase in the value of their properties by the opening
of the streets in question.   We have nothing to do on this
record with the question of how these benefits are to be col-
lected."   In re Berks St., 12 W. N. C. 10.

A lien for grading, paving and curbing a sidewalk was filed
against a lot of the company, containing one and a half acres
occupied by the company with depot, freight depot and lumber
yard.   It was held to be error to strike off the lien.   Chief
Justice PAXSON, after commenting on the decision in the tax
cases, and pointing out the distinction between general tax-
ation for the support of the government, and municipal charges
or assessments for local improvements, and restating the grounds
upon which it is held that the roadbed of a railroad company
is not liable to such charges, said: "But this reason does not
apply to a railroad station where passengers assemble to take
trains; much less does it apply to ground used as a freight
station or a lumber yard. . . . We are of opinion that, while
the roadbed or right of way of a railroad company is not the
subject of a claim for paving, it does not follow that a passen-
ger or freight depot, the ground belonging to the company and
used as a lumber yard or for other purposes may not be sub-
jected to such charge.   The learned judge below has assumed
that this claim was filed against the roadbed.   This does not
appear from the face of the claim as filed, except inferentially.
Should it appear on the trial below that, in point of fact, it
does cover the right of way, it cannot, of course, be sustained;
at least so much of it as covers the roadbed:"Mt. Pleasant
Bor. v. B. &. O. R. Co., 138 Pa. 365.

These cases may not absolutely preclude discussion, but they
go very far towards showing that land held as this is may
be subject to assessment, and to sustain the conclusion of the
learned judge below, that the difficulties in enforcing collection
of the claim were not enough to justify the court in refusing
judgment.   Perhaps, as he suggests, the court would be justi-

fied in applying the beneficent provisions of the mechanic's lien law, in furtherance of justice and to prevent wrong: See also opinion of WOODWARD, J., in Oakland R. Co. v. Keenan, 56 Pa. at page 204. But we express no decided opinion on that question, and are not to be understood as giving directions. We have gone into the discussion of the remedy only so far as it was pertinent to the question of legislative intention.

There is a manifest difference between the roadbed—"that narrow strip of ground which forms the right of way of a railroad "—and a lot of land owned in fee and traversed by the tracks of a railroad company, but part of which lot is, in the language heretofore quoted, but "a convenient possession, affording facilities in conducting the business of the company and enabling it to make money." The former cannot possibly be benefited by the local improvement, or at least some local improvements, whilst the latter may be; the former is such an integral and indispensable part of the railroad—without which it would not be a railroad—as cannot be sold separate from the franchise; whilst in the latter case a part of the land, at least, could be devoted to any legitimate purpose and could be sold by the company or by adverse process without dismemberment of the railroad or preventing it from performing all the functions in which the public are interested. The latter distinction holds good between this case and the cases of Foster v. Fowler, supra, and Guest v. Water Company, supra. If many tracks crossing a lot owned in fee by a railroad company are to be held as giving the character of "roadbed" to the whole lot and shielding the whole against lien and sale, it would be difficult to show why a single track would not have the same effect. We hesitate to adopt a construction that might lead to such results, and that would certainly result in inequality, as we have endeavored to show. Without extending further this already too long discussion, we are of opinion that this was a valid lien, and that the plaintiff was entitled to judgment notwithstanding the affidavit of defense. This conclusion renders it unnecessary to discuss the local act of April 21, 1858, P. L. 381.

Judgment affirmed.