# The Lackawanna Iron and Coal Company *versus* The County of Luzerne.

*Real and Personal Estate of Corporations.—Exemption of from Taxation.*

1. The houses, lands, and other property of a corporation held for its private purposes, are not exempt from taxation, because purchased with its capital stock on which it is obliged to pay a tax to the Commonwealth, unless specially exempted in the charter.

2. The public works of corporations used as such, with their necessary appurtenances, are exempt from taxation : but all other property, personal and real, held by them is liable to assessment and taxation for customary taxes, in the same manner as though held by individual owners for similar purposes.

ERROR to the Common Pleas of *Luzerne county*.

This was an amicable action between the Lackawanna Iron

and Coal Company, plaintiffs, and The County of Luzerne, defendant, in which the following case was stated for the opinion of this court:—

The plaintiffs were incorporated by an act of the legislature of this state, entitled "An Act to incorporate the Lackawanna Iron and Coal Company," passed the 5th day of April 1853: P. L. 306, and a supplement thereto, passed the 2d day of May 1855, P. L. 398, which acts are to be taken as part of this case. That the capital of the company actually invested amounts to $800,000; that, among other things, the said sum is invested in the property situate in the borough of Scranton, and assessed as follows, to wit:—Money at interest, $65,000; nine hundred and sixteen acres of land, worth $7505; eighty-three lots, worth $1600; two hundred and twenty-two houses, worth $1777.30; a foundry, worth $1200; store and office, worth $1500; pattern-house, worth $300; flouring-mill and saw-mill, worth $4500; coal breaker and fixtures, worth $300; an engine-house, three blast furnaces, rolling-mill, and four out-houses, worth $53,300; eight carriages, worth $400, and fifty-two mules, worth $2080. That the said plaintiffs are engaged in the said borough of Scranton, in the making and manufacturing of iron, in the mining, using, and selling coal, taken from their mines in the said lands so assessed, and in the manufacturing and selling lumber taken from said lands; that all the lands hereinafter mentioned are either coal, iron, or timber lands, and are held by the company only for the coal, iron, or timber in and on the same, and the products thereof are used solely in the business of said company as aforesaid, to wit:—

| | |
|---|---:|
| Two hundred and fifteen acres of land, valued at | $4,300 |
| Seven hundred and one acres of land, valued at | 3,505 |

That the following property, also assessed as aforesaid, is held and used exclusively and solely for the purposes of the business of said company, to wit:—

| | |
|---|---:|
| Foundry, valued at | 1,200 |
| Saw-mill, " | 2,000 |
| Pattern-house, | 300 |
| Coal breakers and fixtures, | 300 |
| Three blast furnaces, | 18,000 |
| Engine-house, | 20,000 |
| Rolling-mill, | 15,000 |
| | $64,605 |

That the said property, so assessed, is charged by the county commissioners of Luzerne county, with county taxes at the rate of five mills on the dollar of said valuation, and state taxes at the rate of two and a half mills on the dollar; that the amount

of state and county taxes, so assessed, is $484.53; that prior to the payment of said taxes, the said company appealed to the board of county commissioners from said assessment, and the commissioners dismissed the appeal and affirmed the assessment; that the said commissioners issued their warrant to the collector of taxes for said borough of Scranton, for the collection of said taxes from said company; that the said collector, in pursuance of said warrant, demanded of said company payment of the same; that said company, protesting against the validity and legality of the said assessments and the said taxes, paid the same under such protest to the said collector; that the capital stock of said company, to its full amount of $800,000, has been assessed, for state taxes, in the office of the auditor-general of this state, and the taxes thereon have been duly paid by said company to the state treasurer. For the year 1859 the company made a dividend of 10 per cent., and paid into the state treasury $4000. If, upon these facts, the court should be of the opinion that the said property, as before stated, is not liable to taxation by the county commissioners for state and county taxes, then judgment to be entered for the plaintiffs for $484.53. If the court should be of opinion that some part of said property is not so liable, then judgment to be entered for the plaintiffs for the amount of taxes so assessed upon such part with costs. If the court are of opinion that the whole taxes are rightly assessed by the county commissioners, then judgment to be entered for the defendant with costs.

The case was argued at a special court before his Honour Judge PEARSON, who, on the 22d of June 1862, delivered the following opinion :—

"The case stated by the parties presents the following facts: The plaintiff was incorporated in the year 1853, by the name of The Lackawanna Iron and Coal Company, with a capital stock of $500,000, with power to increase the same to $800,000, which it was authorized to employ in mining iron ore, making and manufacturing iron, mining coal and limestone, and transporting and vending the same, and for such other objects as are necessary in the prosecution of said business. Authority was conferred on it to hold land in the county of Luzerne, not exceeding, at any one time, three thousand acres, with power to mortgage, sell, lease, or otherwise dispose of the same, or any part thereof. By a supplement, passed in the year 1855, the company was authorized to increase its capital stock $400,000, and, in addition, to acquire and hold, in the county of Luzerne, certain timber and iron ore lands not exceeding five thousand acres, and iron ore lands, in the state of New York, not exceeding one thousand acres, and to mine, obtain, and use the ores, timber, and other products of the lands aforesaid, and to sell and dispose

[Lackawanna Iron Co. *v.* Luzerne County.]

of said lands and products as said company may deem expedient, and as may be necessary and proper in the prosecution of their business.

" Under the provisions of their charter, this company erected their blast furnaces, a rolling-mill, numerous dwelling-houses, and other buildings; also a saw-mill and a grist-mill, and held a large amount of personal property used in the prosecution of its business.

" Eight hundred thousand dollars of the capital stock has been paid in, which is mainly invested in the business of mining and manufacturing within the terms of the charter, provided making lumber is included therein, and two hundred and fifteen acres of land, and also seven hundred and one acres, are held by the company, and used solely for the coal, iron ore, or timber thereon.

" All of the property, real and personal, was taxed by the county of Luzerne for state and county purposes, for the year 1859, to the amount of $484.50, which was paid under protest, and for the same year the company paid into the state treasury a tax on its capital stock of $4000.

" The questions presented are : Can the money be recovered back on account of illegality of the assessment ? Was the whole assessment illegal, or was any part, and how much ?

" The 4th section of the Act of 15th of April 1834, requires an assessment of real estate, viz. : 'All houses, lands, lots of ground, ground-rents, mills, and manufactories of all descriptions, all forges, furnaces,' &c. The 32d section of the Act of 1844, makes similar provisions in almost the same words, and the property of this company clearly comes within both enactments. On what ground, then, is the exemption claimed? It is very clear that the company has already paid a state tax on all its capital stock which purchased this property, and it is said that the policy of the law is opposed to double taxation ; that no second tax will be assessed by mere implication.

" There is nothing in the charter of this company exempting its property from the common burdens of society, or granting it any immunity from the payment of taxes. No clear words exonerating its lands, houses, furnaces, and mills from furnishing their quota of funds to meet county expenses, make roads, support the poor, or sustain the public schools, on account of the tax paid into the state treasury on its capital stock. It is true that the 10th section of the charter act requires the corporation to pay to the state treasurer, for the use of the Commonwealth, 1 per cent. upon the amount of the capital stock subscribed, and the supplement requires a like sum on the additional stock ; but that is not as a substitute for future taxes, but as a bonus for

the charter; the same as required from all banks, and from many other manufacturing companies.

"So far as we can collect from the adjudications heretofore made, the Supreme Court has never yet decided that the houses, lands, and goods belonging to a corporation, are exempted from the payment of taxes merely because they were purchased with its capital stock, on which it is obliged to pay a tax to the Commonwealth. In every case there has been something in the nature of the corporation, or the character of its business, which showed that it was improper that the particular article should be taxed.

"In The Permanent Bridge *v.* Frailey, 13 S. & R. 422, the exemption was placed on the double ground that bridges were not named in the tax laws, and the erection was in the nature of a highway, and intended for public travel.

"The Bridge Turnpike Company *v.* Stoever, 6 W. & S. 378, Navigation Company *v.* Northampton County, 8 Id. 234, Railroad *v.* Berks County, 6 Barr 70, Navigation *v.* Berks County, 1 Jones 202, Wayne County *v.* Delaware and Hudson Canal Company, 3 Harris 351, and New York and Erie Railroad Company *v.* Sabine, 2 Casey 242, are all cases of public highways, turnpikes, railroads, or canal companies, in which it is held that the line of road and ground occupied thereby, and the buildings immediately necessary for its enjoyment, not merely useful or convenient, were exempt; whilst all other property, though erected for the convenience of the company, and to promote its trade and business, was subject to taxation. There was no claim for immunity because any part of the property was purchased or built with capital stock which paid a tax to the Commonwealth. Throughout our judicial decisions, highways of the character mentioned are treated as great public benefits, and have conferred on them by legislation many of the immunities and privileges of the Commonwealth, such as taking private property for their construction, and many other matters which have never been granted to manufacturing, banking, or other private corporations, in which the public has no interest whatever, except as they tend to improve the country. One case has, however, been pressed on our consideration as decisive of the present case, and which is not of the character referred to: The West Chester Gas Company *v.* The County, 6 Casey 232.

"Although it is a little difficult to fathom the views of the court in saying that 'the gasworks are clearly exempt,' whilst the houses built on the land which the company was expressly authorized to purchase for the purpose, were subject to taxation, yet we must believe that the character of gasworks extends into their considerations. A large portion of its expenditure is made in extending pipes through towns and cities; in carrying the gas

[Lackawanna Iron Co. *v.* Luzerne County.]

into houses; in the purchase of meters set up in every building; and thus to a certain extent assimilating to highways, which pass over the lands of numerous persons, and which could not properly be laid off and valued. It is one of the franchises of such a company to carry its pipes through and under the streets and highways, and not unfrequently across private property, and in this particular is entirely unlike an ordinary incorporated manufacturing company, which probably has never been authorized to interfere with private rights without the consent of the owner. The same principle would apply to an incorporated water company, for like reasons. Neither gas nor water companies are enumerated in the general tax laws; but we would say, in the language of Judge Porter, in the case last named, when speaking of the boarding-houses for workmen, 'the cause stands on the verge, and we are unwilling to go further.' That, as well as all the other cases, shows that it was not because the capital stock of the corporation was taxed, or had paid a bonus for its franchises, that its property was exempt, as all not immediately or necessarily used on the line of navigation or travel, or directly applied to the manufacturing or conducting the gas, was held subject to the ordinary burdens. Dwelling-houses, workshops, warehouses, coal-screens, schutes, slides, and all machinery and buildings used to make profits and add to the business of the company, were required to pay both state and county taxes in this case; and also in Wayne County *v.* The Canal Company, and Railroad *v.* Berks County.

"One general reason may be given for all the decisions as to railroads, canals, turnpikes, and gas companies being exempt—none of them are enumerated in the Acts of Assembly imposing taxes, and therefore came within the early case of Friedley and The Bridge Company; whilst all of the plaintiff's property is enumerated in the statutes—forges, furnaces, rolling-mills, lands, houses, saw and grist mills, &c. In not one of the cases reported is the exoneration placed on the ground of the capital stock being taxed, and had that been the reason, the other houses built with the same capital would have been equally entitled to exemption.

"We are therefore of the opinion that there is nothing in the character, object, or business of this corporation which will exempt any part of its property described in the case stated, from assessment for the customary taxes imposed on similar property held by individuals for like purposes. If it should go clear, every incorporated cotton-mill, woollen factory, iron establishment, coal company, and hundreds of others throughout the state, would claim like immunity for all their property. In many counties, such as Schuylkill, Carbon, Luzerne, and others, probably one-third in value of all the property is held by incorporated companies, and should that escape from the payment of taxes,

[Lackawanna Iron Co. *v.* Luzerne County.]

an undue burden would fall on all other property holders. That alone should not deter us from giving these companies every immunity conferred by law, but public convenience, private justice, and individual hardship should cause us to hesitate, and carefully examine the legislation which is said to confer such privileges, exemption never heretofore claimed or supposed to exist, by any of these various incorporations throughout the state. Taxation, which is intended to be imposed with perfect equality, would often be found to be most unequal. Real estate, and personal property belonging to individuals, is subject to county, state, road, school, poor and municipal taxes, whilst that owned by a corporation would, on the principle claimed, be exempted from all but state taxes, at the rate of one half-mill on each one per centum of its annual dividends, which, in many cases, would not amount to one-half of the state tax alone, according to a fair valuation. It is true that this company has paid a heavy state tax for 1859, having made a dividend of ten per cent. among its stockholders; but many similar companies do not declare one per cent. annually, and consequently their property would escape with impunity. We must not look to favourable cases alone, which always make bad precedents, but expound the law as applied to all property held by incorporated companies, whether the business is conducted profitably or otherwise. The same rule must apply to the hundred corporations created annually by the legislature for manufacturing or mining purposes, and to the thousand self-created companies, incorporated every year by the courts; the property all must escape, or all must be taxed.

"It is very true that double taxation appears to be unjust towards the owner, but to permit property of great value to escape from the payment of county, school, road and borough, or city taxes, on account of paying a comparatively small sum annually into the state treasury, is as unjust towards the community. Double taxation, says Judge Porter, is not uncommon, and the power of the legislature to tax twice is quite as ample as to tax once: 6 Casey 232. And Judge Coulter says, in Saving Fund *v.* Yard, 9 Barr 361, that it is of daily occurrence, and gives as an instance the tax on land, and on the mortgages and judgments which encumber it, perhaps to its full value. He also shows in that case, that the word 'persons,' in the Acts of 1844 and 1846, means artificial as well as natural persons; and if that position be correct, we have the 32d section of the Act of 1844, imposing a tax on all real estate, and nearly all personal property 'held by any person or persons whatever,' whilst the 33d section of the same act subjects the capital stock of all incorporated companies to taxation in the manner therein prescribed. The legislative intention to permit no property, real or personal, held by a corporated body to escape taxation, is still more clearly

[Lackawanna Iron Co. *v.* Luzerne County.]

maintained by the 1st section of the Act of 22d of April 1846, which Judge Coulter considers was intended to spread the net broad enough to catch all which had previously escaped. The payment of a tax on dividends and capital stock did not suffice to protect the security for money at interest held by that company, although in the direct line of its business.

"I decided, in The Commonwealth *v.* The Delaware and Hudson Canal Company, that double taxation was not generally intended by the legislature, and relieved the company from paying a tax on its capital stock, and the land purchased with it, which had been very correctly assessed for county and state purposes in the ordinary way, and the taxes previously paid. But the case may be considered as an exception, arising on the words of the charter, rather than a rule. Every company knows when it obtains its charter, that the stock is subject to taxation under the general laws, and when it purchases real estate, that it stands in the same category with all other property, and it agrees to bear the double burden.

"The corporations within this state have less cause to complain of the imposition of double taxes than might, at first thought, be imagined. They very generally accept their privileges under an implied contract to pay taxes on their dividends, as well as on their capital stock, yet they are entirely relieved from the former by the Act of the 12th of April 1859. If, in addition to this, we should say the real and personal property used in their business must not bear its portion of the public burdens, it would give them an immense advantage over private individuals.

"The opinion already expressed makes it unnecessary to go into the details of the assessment, else it might be shown that a large portion of the property described, both real and personal, is, according to adjudicated cases, subject to taxation. Having struck at the foundation of the whole claim, we are relieved from considering the separate items in detail, but must render a general judgment in favour of the defendant on the case stated."

The case was thereupon removed into this court by the plaintiff, for whom the entry of judgment in favour of defendant was assigned for error.

The case was argued in this court by *Jessup & Hand* for plaintiff, and by *Garrick W. Harding* for defendant.

The opinion of the court was delivered, April 21st 1862, by

THOMPSON, J.—The decision of the court below on the case stated, is in exact accordance with the case of The Carbon Iron Company *v.* Carbon County, 3 Wright 251. Upon the authority of this case the judgment must be

Affirmed.