Western New York and Pennsylvania Railway Company, Appellant, *v.* the County of Venango, T. B. La Rue, Wm. Brosang, and J. T. Wallace, its Commissioners, and John McGarvey, Tax Collector.

*Taxation—Railroad property—Exemption—Controlling test.*

In determining the liability to taxation of railroad property the test is to be found in the distinction between that which is indispensably necessary to the operation of the railroad as such, and that which is necessary profitably to conduct the business of the corporation.

*Taxation—Railroad's exemption of repair shop—Equity—Jurisdiction.*

Lots and buildings are exempt from local taxation when used as the general repair shops of the plaintiff's railroad where the use is exclusive and

limited to repairs and rebuilding, in reconstructing and restoring . from dangerous to safe conditions the motive and rolling stock of the company after accidental injury and natural wear and tear.

Equity will enjoin an attempt to collect taxes levied on such property.

Argued May 17, 1897. Appeal, No. 118, May T., 1897, by plaintiff, from decree of C. P. Venango Co., Nov T., 1895, No. 4, dismissing bill in equity. Before RICE, P. J., WICKHAM, BEAVER, REEDER and ORLADY, JJ. Reversed.

Bill in equity to restrain defendants from collecting county and poor taxes for the year 1895, and perpetually thereafter, assessed on the plaintiff's property in Oil City.

The facts sufficiently appear in the opinion of the court.

The court below dismissed the bill and plaintiff appealed.

*Errors assigned* among others were (3) In finding as a question of law, that the plaintiff was liable for the taxes assessed. (5) In dismissing plaintiff's bill.

*Isaac Ash*, with him *Frank Rumsey*, for appellant.

*Wm. H. Forbes*, for appellee.

OPINION BY ORLADY, J., July 23, 1897:

The appellant corporation is the owner of a tract of land adjoining its main tracks in Oil City, Venango county, Pa., and it has erected thereon a number of structures connected with the operation of the railroad. In 1895 the county commissioners of Venango county and the proper assessors divided the property of plaintiff for the purpose of taxation, from which act no appeal was taken, and caused an assessment to be made thereon, as provided by law, and levied taxes against these pieces or tracts of land marked and designated as lots 347, 348 and 198 B.

The appellant filed a bill in equity to restrain the defendants from collecting county and poor taxes on the property as designated. A preliminary injunction was issued upon security being entered; and after an answer and replication were filed, testimony was taken by the court, and from the facts therein disclosed, the findings and opinions resulted in a decree, dissolving the injunction and dismissing the bill.

From the testimony the court found as material in disposing of this question, the following facts :

" 2. The said company has acquired, and occupies certain land situate in the city of Oil City, Venango county, Pa., upon certain designated parts of which, are erected the following buildings, viz: Upon that part designated as lot 348, in defendant's exhibit B, is erected a building known as the car shop, also carpenter shop; upon that part designated as in said exhibit as lot 347 is erected a building known as the machine shop, also a store room; and upon that part designated in said exhibit as lot 198 B, is erected a water-closet.

" 3. The buildings on said lots Nos. 347 and 348 are used as the general repair shops for the plaintiff's roadway, the cars, locomotives and rolling stock of the company being there repaired, rebuilt when necessary, painted, etc., but entire new structures are not there manufactured, and the capacity of such shops is not greater than is necessary for the work of plaintiff company. Lot No. 198 B is also used in part as a wood yard, for storing wood used in starting fires.

" 4. The said lots Nos. 347, 348 and 198 B, being parts of a larger tract of land used by the plaintiff company, were so marked and designated by the proper assessors, and commissioners for purposes of taxation, to distinguish them from other lands belonging to plaintiff, conceded to be exempt from local taxation, and being so designated were returned and valued for taxation, and county rates were assessed thereon by the commissioners."

The court below said : " The foregoing covers all the facts which we deem material to a proper determination of the legal questions involved. Upon the part of the plaintiff, it is contended, first, as a fact that the shops in question are repair shops only; that is that they are not used for the purpose of manufacturing new constructions, but for repairs only of the cars, locomotives, and rolling stock of the plaintiff company; and secondly being repair shops only, they are as a matter of law not subject to local taxation."

With the findings of fact, and in explanation of the conclusion reached, the court says : " We are unable to understand why a distinction should be made between shops used strictly for repairs, and those used for the construction of new stock for

a company.   New stock, as the old becomes unfit for use or the wants of the road increase are as indispensably necessary as are repairs, therefore if repair shops be exempt, shops for the construction of locomotives and cars for the road should also be exempt.   Both may be owned and operated and are convenient for the economical operation of a railway, and in a certain sense, because of the convenience, necessary, as some of the witnesses testify, but as the same witnesses, on cross-examination admit, the necessity amounts to no more than a convenience in operating the road, and they are not necessarily a part of its original construction.   A road may be constructed and operated without either, they are therefore not indispensable."

The railroad company brings this appeal, and as there are no controverted facts, we are required simply to apply the law to the findings as determined by the learned judge below.   The vital assignments are: Third, the court erred in finding as a question of law that the plaintiff was liable for the taxes assessed. Fourth, the court erred in finding that the property assessed was liable and subject to taxation.   Fifth, the court erred in dismissing plaintiff's bill.   Sixth, the court erred in not enjoining the defendants from the collection of taxes in question.

It is not necessary to explain why a distinction should be made between shops used strictly for repairs, and those used for the construction of new stock for the company.   A long unbroken line of decisions fixes the liability of one and exempts the other, and the reasons given have been accepted by the taxing power and by the courts as conclusive of the matter.   It is too late to dispute the logic or judgments, as the question has been before the Supreme Court in different phases, many times, and has been passed upon by our most eminent judges.

There is a well-defined line of demarcation to be observed in determining the liability to taxation of railroad property, which it is necessary to bear always in mind, viz: the distinction between that which is indispensably necessary to the operation of the railroad as such, and that which is necessary to profitably conduct the business of the corporation.   In all the cases in which the question has been raised, this has been the controlling thought.

In Lehigh Coal and Navigation Company v. Northampton County, 8 W. & S. 334, "the bed, berme-bank and tow-path"

of an incorporated canal were held to be part of the canal, and as such were exempt. In Railroad v. Berks County, 6 Pa. 70, it was held that " water-stations and depots by which latter is to be understood the offices, oil houses and places to hold cars, and such places and buildings as may fairly be deemed necessary and indispensable to the construction of the road ", were not taxable whilst "warehouses, coal lots, coal chutes, machine shops, wood yards, and the like ", were taxable. The latter are only indispensable to the profits to be made by the company, and are legitimate subjects of taxation, within the act of 1844, P. L. 486. They are not appurtenant to the road, but to the business done upon it.

In Wayne County v. Canal Company, 15 Pa. 351, it was held that the " reservoir for supplying the canal with water " was not taxable, neither were " houses and gardens, occupied by the collectors and lock tenders " along the line of the canal and railroad ; nor were the " engine and machinery for raising cars up the inclined planes," nor the " engine houses, houses and gardens on the line of the road occupied by the engineers attending the engines," nor " the collectors' and engineers' offices " in Honesdale liable ; but the buildings in Honesdale, at the junction of the canal and railroad, used for shipping and transshipping goods and merchandise to and from the canal and railroad, and houses used as boarding houses for workmen, and the stables used for the horses drawing the cars on the railroad, also the workmen's tools, were liable to taxation.

In New York & Erie Railroad v. Sabin, 26 Pa. 242, it was held that the " machine shops, foundries, freight and passenger houses " of the company which are used to carry on the business of the road, and the expenses of their erection, charged to the cost of construction, are not subject to assessment and taxation for state and county purposes, under the Acts of April 15, 1834, P. L. 509 and April 29, 1844, P. L. 486.

In the West Chester Gas Company v. County of Chester, 30 Pa. 232, it was held that " the works of an incorporated gas company " are not taxable as real estate for state and county purposes, but dwelling houses erected by the company, for the residence and accommodation of its workmen are liable to taxation,—the reason given being : " The principle which pervades the law thus established, is the indispensability of the exempted

property to the other privileges granted by the legislature; for the injustice of taxing a company to the value of its property, and then taxing special articles necessary to the enjoyment of the whole, was not to be imputed on slight grounds," and followed in Gas Co. v. County of Chester, 97 Pa. 476, exempting "the buildings, retorts, machinery, conduit pipes, reservoir, of a gas company."

In Lackawanna Iron and Coal Company v. County of Luzerne, 42 Pa. 424, it was held, following the decision of Carbon Iron Company v. Carbon County, 39 Pa. 251, that it is only the "public works held by corporations, together with their necessary appurtenances, as public works" which are exempt from taxation, and that lands held by corporations for private purposes are taxable, as the lands of individuals, unless expressly exempt.

In Cumberland Valley Railroad Company v. McLanahan, 59 Pa. 23, it was held that, "whatever buildings and erections were necessary to a railroad as such,—without which it would not be a complete and perfect railroad—fit for use,—are included by implication. Such would be depots for the reception and landing of passengers and freights, wood and water stations, toll houses, watch houses and others of similar character;" "the line of the road and ground occupied thereby, and the buildings immediately necessary for its enjoyment not merely useful or convenient are exempt; whilst all other property, though erected for the convenience of the company and to promote its trade and business is subject to taxation."

In Northampton County v. Lehigh Coal & Navigation Company, 75 Pa. 461, it was held, that the Act of April 8, 1873, P. L. 64, did not change the course of judicial decisions upon the construction of the general tax law, but was intended to repeal a large number of special acts upon the statute book, exempting particular properties; and that land necessary to the franchises of a railroad corporation is a part of such franchise, and is not real estate subject to local taxation under the existing laws.

In the County of Erie v. Erie & Western Transportation Company, 87 Pa. 434, it was said that, "It has been repeatedly ruled that the property of canal and railroad companies and other quasi public corporations, necessary for the exercise of

their several franchises, as depots, toll-houses, and water stations are not taxable for local purposes. The reason given for this exemption is that these things enter into the very composition of the works of these corporations, and, without which they could not exercise their corporate functions."

In Pennsylvania Railroad Company v. City of Pittsburg, 104 Pa. 522, will be found a careful presentation of the whole subject in the opinion of the court, and the dissent by Judges GREEN and PAXSON. In item four of the opinion of the court below it is said that, "The law is settled that the words 'real estate' in the general tax law of the state do not include or make liable to taxation the real estate of a railroad company, such as road-beds, depots, machine shops, and other land necessary for the operation of the road." But the decision in that case, as stated by the court, turns on the proper construction of the Act of January 4, 1859, P. L. 828, Northumberland v. P. & E. R. Co., 20 W. N. C. 381, entitled "an act to enable the City of Pittsburg to raise additional Revenue," section three being, "all real estate situated in said city, owned or possessed by any railway company, shall and is hereby made subject to taxation for city purposes, the same as other real estate in said city." And the Supreme Court, in affirming the judgment, held that under the third section the decision was correct. "The fact that such property had heretofore been held to be an incident to the corporate franchises of the corporate companies, matters not. It nevertheless was real estate. Land purchased and owned by copartners, as partnership property, may, for many purposes be considered personal property, yet for all purposes of taxation it is real estate. The fact that this property was held and used by the railroad companies to facilitate the working of their roads, did not destroy its character as real estate." In the last sentence is the legal reason for the affirmance of the judgment of the court below.

In Allegheny County v. McKeesport Diamond Market, 123 Pa. 164, "a market house building" was held liable to taxation under the act of April 15, 1834. "The case stated shows that the defendant is a private corporation, carrying on the business of renting out portions of its building which is a market house. It differs in no respect from an individual who is engaged in the same business, except that its building is located upon a

public square in the borough." "If the market house were located upon other land it would not be pretended that it could for any reason escape taxation for county purposes. It is simply and only a case of a private corporation carrying on its business and owning real estate under the description of a house."

In Appeal of the City of Pittsburg, 123 Pa. 374, it was held that "gas pipes of an incorporated company," lawfully engaged in the production and supply of natural gas, are not assessable eo nomine for local taxation on the ground that they were "the public works of a corporation without which its franchise rights were useless."

In P. C. & R. v. Vandyke, 137 Pa. 249, specially relied upon by the appellee, it was held that "the repair shops, consisting of the machine shop, blacksmith shop, boiler shop, wood pattern shop, paint shop, foundry, car shop, car blacksmith shop" of the railroad company were subject to the taxes levied upon them; but examination of the case shows that under the description of the buildings as "repair shops" was included a number of buildings in which new engines and cars were built; that work for other roads was done and that the plant under that descriptive name "repair shop," was not used exclusively for the repair of the engines and cars of the railroad company. The Supreme Court said: "It is probable that these shops are a convenient possession, affording facilities in conducting the business of the company, and enabling it to make profits; but they are not under the well considered decisions of this court, exempt from taxation for local purposes."

This case is based upon Railroad v. Berks County, 6 Pa. 70, and East Penn. R. R. Co.'s Case, 1 Walker, 428, but in neither does it appear that the shops mentioned were exclusively used for the repairing of the engines and cars; in the first the property was assessed in gross "for the manufacture, construction and repair of the locomotives, cars and other machinery used upon their railroad," and as stated in the opinion of the court below it is said: "With regard to the property in northeast ward, consisting of twenty-two and three quarter acres, so much of it as is occupied for the purposes of a freight depot, wood and coal yard, coal chutes and an oil office, is not liable to an assessment for taxation. The ten acres, parcel of this and intended to be used for similar purposes are in our opinion liable

to taxation until they are so used, we have no means of apportioning the value of this property. The property in the southeast ward is valued in the assessment in gross, and we have no means of apportioning the valuation between the workshop, which is, and the passenger depot which is not liable to assessment for taxation;" which is directly affirmed by the Supreme Court.

In the latter case, the property was described in the case stated as follows: " On this twenty acres are erected railroad sidings, machine shops in which engines are repaired, blacksmith shop in which smith work of the road is done, carpenter shop in which cars are built and repaired, paint shop, oil and waste house, where oil and waste are stored, round house, turn tables, coal docks in which coal for locomotives is stored, water station and cattle yard."

This blending in the description of works used for construction, with repair shops, might apply to works in which car building was the principal business. The property was not separated as in this case, and was dealt with as in every other case where the railroad company did not affirmatively show that the property claimed to be exempt was separated from construction works, and was indispensably necessary to successfully operate and use the grant of the legislature to the corporation.

In Northumberland County v. P. & E. Railroad Company, 20 W. N. C. 381, the court below in a careful opinion, says: " I am of the opinion that the leaning of the decisions is that the indispensable works of a public corporation are part of its corporate franchise, and therefore taxable as stock which is personal property, and hence is not to be regarded as real estate in any form. Such property is not in fact real estate or houses or lands, but personal estate, corporate franchises." The property was described as a "round house, a repair shop, a traverse table, an oil house, paint shop, engine and boiler house, tracks and sidings used as ways of approach to the stations and buildings in connection with the railroad and providing the required terminal facilities for the company and its lessee" of which the court below says "it is absolutely and indispensably necessary to have terminal, approaching and connecting facilities at the ends of each line; in other words, tracks and sidings used for shifting and making up trains, to be taken on

and over the connecting roads. These, we think, are a part of the public works of the companies used as such, with their necessary appurtenances, and are ordinary and pertinent works and structures to the railroads, and are strictly necessary in exercising their several franchises," which was affirmed by the Supreme Court.

In Water Company v. Girton, 142 Pa. 92, it was held that the lands of the water company along the line of the stream used for supplying water to it, were not exempt from taxation, for the reason urged, "For fear a nuisance might be erected on said lands and contaminate said stream."

In Schuylkill County v. Citizens Gas Company, 148 Pa. 162, it is stated by the court below: "A public corporation is one which cannot carry out the purposes of its organization without chartered rights from the commonwealth. Railroads, canals and gas companies must have the right of eminent domain in order to perform their functions. Their property, which is indispensable to their chartered rights, is represented by their capital stock, and as such is taxed specially by the legislature, and the law will not subject it to duplicate taxation by mere inference. It must expressly be made subject by statute. Such of the property of such corporation as is not indispensable, but is merely convenient, is held subject to taxation under the general law assessing such property," and in disposing of the case, that part of the property of the gas company which was found to be indispensably necessary to enable the defendant to carry on its business, was held exempt. The remaining part of it was held liable to taxation; which was affirmed by the Supreme Court.

In St. Mary's Gas Company v. Elk County, 168 Pa. 401, the same question is carefully considered and the same result reached by the court below, and affirmed by the Supreme Court.

Returning now to the facts in this case, the court below finds that the buildings on lots 348 and 347 are used as the general repair shop for the plaintiff's roadway, "The cars, locomotives and rolling stock of the company being there repaired, rebuilt when necessary, painted, etc., but entirely new structures are not there manufactured, and the capacity of the shops is not greater than is necessary for the work of the plaintiff company." The facts as found are based on ample evidence. The use is

exclusive, and limited to repairs, and rebuilding, in reconstructing and restoring from dangerous to safe conditions, the motive power and rolling stock of the company after accidental injury or natural wear and tear of the structural parts. While the words ("repair shops" and "machine shops") have been used in a number of the cases above noted, it will be found on examination that in no case has it been decided, that repair shops. strictly used as such, are held liable to taxation, and the reason of their exemption is pointed out in nearly every case cited. The demand for rapid travel, and the imperative necessity on the part of the railroad company to safely and rapidly transport persons, property, and the government mails, impose on the railroad companies the corresponding duty to have the roadbed, engines and cars in condition at all times to perform their legal duties. The delay of trains, resulting from want of prompt repair of engines and cars, and causing business disappointments and damage, would be a trifling incident as compared to loss of life or injury to persons, caused by not having repair shops and repair storehouses along the line of the road, from which machinery, tools, skilled workmen, and duplicate parts of engines and cars could be promptly transferred to the point where an accident had occurred. Public policy requires that everything which tends to increase the danger of travel upon railroads should be prevented. The propelling power used·in hauling the numerous freight and passenger trains at a high rate of speed; the responsibility for safe roadbed, engines and cars, require that the railroad company shall have as means to meet these responsibilities, and to discharge these duties, the fullest opportunities with the freest use which is deemed necessary to the safe management of the road. Given an engine or car derailed, or parts of an engine or car broken; then repair shops as such, and storage houses for duplicate parts of engines and cars, necessary machinery and appliances, become as indispensably necessary to the proper exercise of the corporate franchises of the railroad company in the discharge of their duty to the public, as are passenger, freight and water stations, tanks and tool houses along the line of their roads. The argument of appellee that the same work could be done by independent persons not connected with the railroad company is not convincing. The railroad company must be the absolute and sole judge of

the manner in which repairs are to be made ; it must have entire control over the skilled labor applying the repairs to an impaired engine or car ; over the manner of doing the work and the hours at which it is done ; and in a matter so vitally affecting the public the company should not be expected to depend on the judgment, skill or direction of an employee of another.

In case of difference of opinion between the railroad company owning the track and engine, and the independent repairman—can it be pretended that a carpenter or blacksmith or machinist in the employ of another should decide as to the necessity for repairs or the efficiency of the work done ? Moreover, no one outside the company could be expected to keep the necessary supplies in stock at the numerous points needed. New engines and cars can be purchased from the builders, but the many incidental and unexpected but certain accidents which naturally happen in operating them, can be remedied only by the company in whose daily service they promote the design of their purchase; any other system of repair would be extremely doubtful in its results, both as to the efficiency of the work done and as to the time expended in performing it.

The third, fourth, fifth and sixth assignments of error are sustained. The decree dissolving the injunction, and dismissing plaintiff's bill, is reversed. The bill is reinstated. The injunction heretofore granted by the court below is continued, so far as it applies to lots number 348 and 347 on which are the general repair shops for the plaintiff's roadway. We do not feel that lot 198 B, used in part as a wood yard and for the other purposes named, is exempt from taxation, and as to it, the taxes were properly assessed. The costs to be paid by the appellee.