## Spring Brook Water Company v. Kelly.

*Taxation—Exemption of land of water company.*

To exempt the land of a water company from taxation, the company must show that the land is indispensably necessary and absolutely essential for its corporate uses so as to enable it to operate properly the water company as such.

A water company will not be exempted from taxation on wild uninhabited mountain lands owned by it where it does not appear that it is necessary for the company to own the land in order to maintain the purity of the water. In such a case it would be unreasonable to exempt the land from taxation, and yet permit the corporation to derive independent revenue from it through sales of timber, operation of mines or quarries, or other uses unrelated to its chartered purposes.

Argued Jan. 17, 1901. Appeal, No. 13, Jan. T., 1901, by plaintiffs, from decree of C. P. Lackawanna Co., Sept. T., 1898, No. 3, on bill in equity in case of The Spring Brook Water Company, and the Spring Brook Water Supply Co. v. M. J. Kelly. Before RICE, P. J., BEAVER, ORLADY, W. W. PORTER and W. D. PORTER, JJ. Affirmed.

Bill in equity for an injunction.

The facts are fully stated in the opinion of the Superior Court.

*Error assigned* was the decree of the court.

*L. A. Watres*, for appellants.—A water company is obliged at all times to furnish pure water: Act of April 29, 1874, P. L. 94; Guest v. Lower Marion Water Co., 28 W. N. C. 285; West Chester Gas Co. v. Chester Co., 30 Pa. 232; St. Mary's Gas Co. v. Elk Co., 168 Pa. 401.

The propriety of taking property for public use is one of political sovereignty to be determined by the legislature, either directly or by delegating the power to agents, proceeding in such manner and form as may be prescribed : Ford v. Chicago, etc., R. R. Co., 14 Wis. 609 ; Water Works Co. of Indianapolis v. Burkhart, 41 Ind. 371 ; Mineral Range R. R. Co. v. Detroit, etc., Copper Co., 25 Fed. Repr. 515 ; Anspach v. Mahanoy, etc., R. R. Co., 5 Phila. 491 ; N. Y. & E. R. R. Co. v. Young, 33 Pa. 175 ; Cleveland, etc., R. R. Co. v. Speer, 56 Pa. 325.

Nor are the plaintiff companies, in the determination of the question, confined to the present needs of their business, but they may properly provide for their future requirements and necessities : Lodge et al. v. P. W. & B. R. R. Co., 8 Phila. 345 ; Penna. R. R. Co. v. National Docks Co., 28 Vroom (N. J.), 86.

The decree of the necessity is exclusively for the legislature, or those to whom it has delegated the power, and not for the court : Smedley v. Irwin et al., 51 Pa. 451 ; Pittsburg v. Scott, 1 Barr, 314 ; In re Towanda Bridge Co., 91 Pa. 219.

*Henry A. Knapp*, for appellees.—The law does not warrant the exemption from taxation claimed by the appellants in this case : New York & Pennsylvania Railroad v. Venango Co., 183 Pa. 618 ; Pa. & N. Y. Canal & Railroad Co. v. Vandyke, 137 Pa. 249 ; R. R. Co. v. Berks Co., 6 Pa. 70 ; East Penna. R. R. Co.'s Case, 1 Walk. 428 ; Roaring Creek Water Co. v. Girton, 142 Pa. 92.

It would be a great hardship to the taxpayers of Spring Brook township if appellants' contention should be sustained.

Plaintiffs have not acquired an entire watershed, and therefore, cannot claim, in this case, that a watershed is a public necessity, and, therefore, exempt from taxation.

OPINION BY ORLADY, J., July 25, 1901 :

The plaintiffs filed a bill in equity to restrain the defendant from selling certain unseated lands for nonpayment of taxes which had been assessed by the county commissioners of Lackawanna county for county and township purposes for the years 1895 and 1896. After a hearing on bill, answer and testimony, the court below entered a decree permanently enjoining the

county treasurer from selling the whole of one and part of another tract of land, and the court dissolved the preliminary injunction as to the rest of the land described in the bill.

The plaintiff corporations were duly incorporated and associated together under the laws of this commonwealth, " for the purpose of supplying water to the public and the supplying, storing and transportation of water and water power for commercial and manufacturing purposes," their combined capital being $1,050,000. For the purpose of this case the united and associated water companies may be treated as one corporation, which owns in fee twenty tracts and parts of tracts of land aggegating 6,200 acres, and supplies water for domestic, commercial, and manufacturing purposes to three cities, twelve boroughs, and eleven towns in the Lackawanna and Wyoming valleys, to a population of upwards of 200,000 people, and to some thirty collieries and manufactories. On the land mentioned are three dams and reservoirs established and maintained, with a storage capacity of about 400,000,000 gallons of water which is conducted to the consumers through about 300 miles of pipes. All the lands are within Spring Brook township and are practically wild and mountainous highlands and foothills of the Moosic and Pocono ranges, having been many years ago heavily covered with timber which has since then been removed and succeeded by a second growth of chestnut, maple and oak. The water company, after securing title to certain of the lands, demolished a number of houses, barns, and outbuildings erected thereon so as to remove from its intake dams and reservoirs all sources of impurity and contamination from the natural drainage surface. The land owned by the water company, a trifling proportion of which is suitable for agricultural purposes, comprises in area about one third of Spring Brook township and in assessed value a little more than one sixth of the whole, the total assessment being $16,658, on which county, school, and road taxes were duly levied. Since these were not paid, the lands were returned to the county commissioners as unseated, and, after being certified to the county treasurer, were advertised for sale for the payment of the taxes. Certain described lands of the water company were omitted from the return by the taxing authorities as being properly exempt from taxation. The water company claims that all the lands described in the

bill are a necessary part of their works and water supply, and as such are covered by its capital stock on which it pays the usual taxes demanded by the commonwealth. It was clearly proved, and the court below found as a fact that the lands were purchased and are held by the corporation for the purpose of preserving and maintaining its water supply free from contamination with dangerous and deleterious matter, and are useful in the furtherance of that commendable design. It must be conceded that to carry out its corporate purposes the corporation must erect and maintain intake and storage dams and reservoirs, and these with the land they occupy and overflow, together with a reasonable quantity of other land immediately adjoining and surrounding them, also the conduits, pipes, usual appliances and fixtures for conducting and distributing the water among its customers, are essential to its existence and the reasonable enjoyment of its franchises and are thus exempt from taxation for local purposes. It must also be conceded that for domestic uses the water should be free from unwholesome substances; and as far as the dams, reservoirs, the main streams and tributaries are concerned they are indispensably necessary in order to perform the charter functions of the corporation.

This far the court below went, but held that there was no necessity for the company to purchase or hold the extent of acreage which they do in order to keep the water pure. In Western N. Y., etc., Ry. Co. v. Venango County, 5 Pa. Superior Ct. 304, this court said, in a case concerning land on which the general repair shops of a railroad company were located, " there is a well defined line of demarkation to be observed in determining the liability to taxation of railroad property, which it is necessary to bear always in mind, viz: the distinction between that which is indispensably necessary to the operation of the railroad as such, and that which is necessary to profitably conduct the business of the corporation." And the same reason applies to the case in hand. The public health is best conserved by requiring the water company to supply water as reasonably pure as natural conditions will admit, and in substantial aid of this consideration the Act of May 26, 1893, P. L. 158, " authorizing water companies to relocate roads destroyed, and to acquire land to preserve water supply from contamination " was enacted so as

to empower a water company to acquire land by purchase or by condemnation proceedings, and, after compensation shall have been made, to hold such land along and contiguous to streams of water, or reservoirs from which water is taken for public use, as may be necessary to preserve them from contamination. The words "such lands along and contiguous to streams of water or reservoirs from which water is taken for public use," could not by any fair intendment be held to include all the land embraced between the watersheds or area of catchment. The lands purchased by the water company as being necessary to preserve the water from contamination, are not clearly and distinctly described in the bill, nor does the evidence disclose which tracts were so purchased, consequently the court was unable to make a decree exempting them from taxation. It is therefore not necessary to pass on that phase of the case.

The land is described as rough, mountainous, and wild, having been denuded of its virgin timber many years ago, and because it is not suitable for agricultural purposes it is treated by the company as of no value for any other. This may be or may not be so. It is not known when the timber was removed. The character of the second growth, the mineral value of the land, the reasonable appreciation of value in the near future for present or prospective uses are not shown by the evidence. It would be unreasonable to exempt the land from taxation and yet permit the corporation to derive independent revenue from it through sales of timber, operation of mines or quarries, or other uses unrelated to its charter purposes. To exempt the land from taxation the water company must show that the land is indispensably necessary and absolutely essential for its corporate uses so as to enable it to operate properly the water company as such. The trial judge finds as a fact that so far as the wild lands are concerned, which are uninhabited, uncultivated, and gradually assuming primeval conditions, the purposes of the corporation are fully conserved through present natural conditions without regard to the ownership of the title to the lands. If any local danger menaces the purity of the dams, reservoirs, streams or tributaries, there is ample protection furnished by the act of 1893, by which the unsafe locality may be condemned and thus become technical corporate property exempt from local taxation.

The case is not to be determined by the amount of acreage alone.    No fixed rule can be laid down on that subject as each case must be decided upon its special and characteristic facts. The conclusion of the trial judge is amply supported by the evidence under authority of Erie Co. v. Transportation Co., 87 Pa. 434, Penna. & N. Y. Canal & Railroad Company v. VanDyke, 137 Pa. 249, Allegheny Co. v. Diamond Market, 123 Pa. 169, Roaring Creek Water Company v. Girton, 142 Pa. 92, and Western New York and Pennsylvania R. R. Co. v. Venango Co., 5 Pa. Superior Ct. 304; s. c., 183 Pa. 618.

Under the evidence in this case we discover no error in the action of the court below; we therefore affirm the decree.