# People's Passenger Railway Company v. Taylor, Appellant (No. 1).

*Taxation—Street railways—Horses.*

Where the only motive power of a street railway company consists of horses, and it appears that all of the horses of the company were used in moving the cars of the company, such horses are not subject to municipal taxation, and it is immaterial in such a case that one or more of the horses were occasionally used in hauling feed to the company's stable, or in hauling money to the company's bank, or in making repairs to the company's tracks.

Argued Oct. 23, 1901. Appeal, No. 168, Oct. T., 1901, by defendant, from decree of C. P. No. 3, Phila. Co., March T., 1893, No. 645, on bill in equity in case of People's Passenger Railway Company v. John Taylor, Receiver of Taxes of the City of Philadelphia. Before RICE, P. J., BEAVER, ORLADY, W. W. PORTER and W. D. PORTER, JJ. Affirmed.

Bill in equity for an injunction, to restrain the collection of taxes on plaintiff's horses.

The facts as they appeared from the bill, answer and proofs are stated in the opinion of the Superior Court.

The court in an opinion by McCARTHY, J., entered a decree restraining the collection of a tax assessed on plaintiff's horses.

*Error assigned* was the decree of the court.

*E. Spencer Miller*, assistant city solicitor, with him *John L. Kinsey*, city solicitor, for appellant.—Quasi-public corporations are not given by the laws of Pennsylvania absolute immunity from all taxation. Thus it has been held that the following varieties of property owned by such companies are not exempt:

Wood and coal yards, coal shutes: Railroad Co. v. Berks Co., 6 Pa. 70.

Buildings in a city used for receiving and transshipping goods and merchandise to and from the canal and railroad, and houses used as boarding houses for the workmen, and horses for drawing the cars on the railroad, and the barns and stables for them: Comrs. of Wayne Co. v. Del. & Hudson Canal Co., 15 Pa. 351; West Chester Gas Co. v. Chester County, 30 Pa. 232.

Grain elevators, warehouses and offices, held by defendant company engaged in business of transporting farm and other merchandise: Erie v. Erie & Western Transportation Co., 87 Pa. 434.

Shops owned and operated by a railroad company, for the construction and repair of its locomotives and cars: Penna., etc., Canal & R. R. Co. v. Vandyke, 137 Pa. 249.

The fact that the company pays a tax upon its capital stock, and its property represents these funds, is not now the basis of exemption. If it were, all property of quasi-public corporations, and indeed the property of all corporations whatsoever, would be exempted: West Chester Gas Co. v. County of Chester, 30 Pa. 232; Carbon Iron Co. v. Carbon County, 39 Pa. 251; Union Canal Co. v. Dauphin Co., 3 Brewster, 124 (see p. 127); Scranton v. Scranton Elec. Light & Power Co., 8 Pa. C. C. Rep. 626; Allegheny Co. v. McKeesport Diamond Market, 123 Pa. 164; Com. v. Fall Brook Coal Co., 156 Pa. 488.

It remains for us to show that the decisions in Pennsylvania have been directed to this very consideration. Not one of them, we believe, from the court of last resort, with one significant

exception, has sustained an exemption for transitory, mutable property, such as horses: R. R. Co. v. Berks Co., 6 Pa. 70; Comrs. of Wayne Co. v. Del. & Hudson Canal Co., 15 Pa. 351; People's Street Ry. Co. v. Scranton, 8 Pa. C. C. Rep. 633; Citizens' Pass. R. Co. v. Donohugh, 10 W. N. C. 62; Smith v. Phila. City Pass. Ry. Co., 12 W. N. C. 171; Del. Co. v. Chester St. Ry. Co., 10 Pa. C. C. Rep. 326.

*Ellis Ames Ballard*, with him *Rufus E. Shapley*, for appellees.—A street passenger railway company operating its cars by horse power, which pays a tax on its capital stock to the state, is not subject to local taxation upon its horses used in drawing its cars, and indispensable to the exercise of its public franchise: Schuylkill Bridge Co. v. Frailey, 13 S. & R. 422; Lehigh Coal & Nav. Co. v. Northampton County, 8 W. & S. 334; Philadelphia v. Philadelphia & Reading R. R. Co., 1 Pa. Superior Ct. 236; Carbon Iron Co. v. Carbon County, 39 Pa. 251; Ridgway Light & Heat Co. v. Elk County, 191 Pa. 465; Western New York & Penna. Ry. Co. v. Venango County, 5 Pa. Superior Ct. 304.

The fact that there is an occasional use of horses (not exceeding fourteen in number), and taken indiscriminately out of the 1,600 horses used for pulling the cars, for necessary objects of the corporation, which use does not bring it in any revenue does not subject the company to taxation upon its horses, either in whole or in part;—the objects being, hauling feed from one stable to another, hauling money from the depot to the bank, and the repairing of the streets along which the railway runs as required by its charter: Southern Electric Light & Power Co. v. Phila., 191 Pa. 170.

OPINION BY ORLADY, J., January 20, 1903:

The plaintiff filed a bill in equity against the taxing authorities of the city and against the municipality, which alleges an attempt to collect taxes from the plaintiff company by taxing the horses used in drawing its cars on the street lines and appurtenant uses.

The case was heard on bill, answer and proofs, and from the finding of the facts it appears that the plaintiff used horses as the motive power to propel the cars upon the Peoples' Passenger Railway and Germantown Passenger Railway Company,

during the year 1892. It owned altogether 1,600 horses and had no other means of propelling its cars. All of the horses, without any exception, were used in hauling the cars of the company along and over its railways, but certain of them were used occasionally for other purposes. Four of the horses were used twice a week to make a single trip in hauling feed from a mill to the company's barn. When repairs on the streets were rendered necessary in order to maintain the roadbed in good order, nine of the horses were used in carts, and one was employed in hauling moneys received by the company from its depots to receiving and disbursing banks, but on holidays it was employed in drawing cars of the railway company.

The court finds as a fact that all of the horses owned and used by the company were necessary and indispensable for the business of conveying passengers over the street railways, and that without them the plaintiff could not have exercised its corporate functions and franchises. After full hearing, the defendants were enjoined and restrained from collecting or attempting to collect taxes levied on the said horses.

In determining what property of the corporation is not liable to local taxation, there is a well defined line of demarkation to be observed in determining the liability to taxation of railroad property, and it is necessary always to bear in mind the difference between that which is indispensable, that which is necessary to the operation of the railroad as such, and that which is necessary to profitably conduct the business of the corporation. In all the cases in which the question has been raised, this has been the controlling thought: Western N. Y. & Penna. Railway Co. v. Venango County, 5 Pa. Superior Ct. 304. See also Spring Brook Water Co. v. Kelly, 17 Pa. Superior Ct. 347.

As was stated in Philadelphia v. Philadelphia and Reading Railroad Company, 1 Pa. Superior Ct. 236, "there is often difficulty in determining between indispensability and great convenience, but the rule itself has been adhered to with as great consistency and strictness as is possible in the application of such a principle to the varying facts of the many cases that have arisen, and the distinctions have been kept steadily in view, as will be seen by an examination of the leading and most carefully considered cases."

The leading authorities on the subject may be found in the foregoing cases, and under facts as clearly found as the ones in this case (that the whole of the property in controversy is necessary and indispensable for the business and proper exercise of the corporate functions and franchises of the plaintiff), the conclusions of law and the decree logically follow.

We are not disposed to critically dissect the testimony in order to determine whether the one horse, which was used for carrying the cash from the depots to the banks, except during holidays or rush seasons when it took its place with the others on the track, was used by the company in such a divisible character as to make it indispensably necessary while at work hauling cars, and conveniently profitable only by hauling the fares secured through the services of the 1,600 horses. Nor is it necessary to further analyse the testimony so far as to determine whether the four horses used once a week to haul feed from the mill to the company's barn, or the nine horses occasionally used in making repairs to the roadbed on which the cars were drawn, were continuously used in necessary service, or incidentally used at irregular intervals and for a short time in a work of convenience. The horses represent the only motive power of the company. The question of that power and its use depended upon the exercise of the judgment of the officers of the corporation in the light of the demand made upon their street car lines by the public for the transportation of passengers. It would be impossible to have the motive power the same during the entire year or during the whole of any one month. It is apparent that the extent and degree of travel would necessarily change with seasons and special occasions, and in order to provide for the expected congestion of travel, an additional number of horses were necessary. These could not be procured as the emergency might arise and it would be but an ordinary business precaution to have such a supply within easy reach, so as to properly discharge its duty in transporting the public. In order to care for and preserve this character of motive power, stables and barns would be as necessary as roundhouses and repair shops would be for engines and cars of a railroad company; or the tollhouses of a turnpike or a canal company. The repair of the track was a necessary incident to the use of the company's franchises, and to preserve it in safe condi-

tion, a part of its motive power was properly used in transporting material for necessary repairs. After a careful examination of the testimony, we feel that the facts found by the court below were amply supported by the testimony. It would be a strained construction to have a court substitute its judgment of the extent of motive power necessary to properly discharge the corporate franchise rights of the street railway company for that of the company's officers, so as to secure an economical and efficient administration of its duties and property rights. Whether it was necessary for the company to have 1,600 horses to properly perform its public duties was a question of fact; and it is not shown that any of these horses were used in any other business than that of the street railway company's affairs as such. Nor did it derive any advantage or benefit from them in any other way than in the transportation of passengers and the maintenance of its property. The mere circumstance that a few of the horses were occasionally used in either regular or emergency cases to properly maintain the company's property does not alter or change the character of work for which they were purchased, and which they were accustomed to discharge.

It was held in Southern Electric Light and Power Company v. Philadelphia, 191 Pa. 170, "that the circumstance that a portion of the property of the electric light and power company is reserved for use for its manufacturing purposes in cases of emergency or to meet the demand of increasing business, does not alter or change its character as being part of the premises used or intended to be used in its essential object, such portion is still a part of the property which in its entirety is exempt from local taxation as real estate." The same may be said of the number of horses used by a street railway company in the indispensable work of the company, and it is not suggested anywhere in the evidence that the number of horses used by the plaintiff was unreasonable, or that they were used for any other than company purposes. We feel there is not sufficient in the appellant's contention to warrant a reversal of the decree in this case.

The assignments of error are overruled and the judgment is affirmed.